**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **Ted Palladeno,** | : | |
| | : | **Case No. 3:18-cv-01352** |
| Plaintiff, | : | |
| | : | **Judge Helmick** |
| v. | : | |
| | : | |
| **Gary Mohr, et al.,** | : | |
| | : | |
| Defendants. | : | |

**INTERESTED PARTY THE STATE OF OHIO'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT (Doc. 24)**

Gary Mohr, Roger Wilson, Robert Hammond, Dr. John Desmarais, Brian Wittrup, Cynthia Mausser, Ginny Lamnek, Kimberly Clipper, Kevin Jones, Donald Morgan, John Coleman, and Terry Collins ("named defendants"),[1] have been named as defendants in this putative class action, only some of whom have been served and none of whom have as yet requested representation. Nonetheless, in order to save resources and avoid the need for multiple motions filed seriatim, the State of Ohio moves as an Interested Party to dismiss Plaintiff Ted Palladeno's ("Plaintiff") Amended Complaint (Doc. 24) pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. A memorandum in support is attached.

[1] Under R.C. § 109.361, the Ohio Attorney General may appear in any civil action in order to protect the interest of the State even though no request for appearance has been made by the officer or employee. Such appearance does not waive personal service and any defenses available at law. Here, Plaintiff is suing current or former state employees and state agents which constitutes the State's interest. Accordingly, the State of Ohio is providing notice to the Court and to the parties of the limited appearance of Assistant Attorney General Mindy Worly as trial counsel and filing this motion to dismiss on the State of Ohio's behalf. Effective immediately, all pleadings and correspondence should be directed to the undersigned at the street address, email address and telephone numbers set forth below.

Respectfully submitted,

DAVE YOST
Ohio Attorney General

s/ Mindy Worly
MINDY WORLY (0037395)
Principal Assistant Attorney General
Criminal Justice Section, Corrections Unit
150 East Gay Street, 16th Floor
Columbus, Ohio 43215
Phone: (614) 728-0161; Fax: (866) 474-4985
Mindy.Worly@OhioAttorneyGeneral.gov

*Attorney for Interested Party State of Ohio*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .......... iv

MEMORANDUM .......... 1

I. Introduction .......... 1

II. Law and Argument .......... 3

A. Standard of Review .......... 3

B. Plaintiff Fails to State a § 1983 Claim Against Any Named Defendant .......... 5

C. There is No Constitutional Right to An Effective Grievance System .......... 7

D. The Complaint Fails to State a Retaliation Claim .......... 8

E. Plaintiff's Health Care Related Claims Should Be Dismissed .......... 10

F. Plaintiff's Formulary Claims Should Be Dismissed .......... 12

G. Plaintiff's Over-the Counter Medication and Co-Pay Claims Should Be Dismissed .......... 14

H. Plaintiff's Single-Occupancy Cell Claims Fail to State a Claim for Relief .......... 16

I. Plaintiff's Claims Regarding Personal Safety Should Be Dismissed .......... 24
J. Plaintiff's Food Services Complaints Should Also Be Dismissed .......... 25
K. Plaintiff's Claims That He Was Overcharged Fail to State A Claim .......... 27
L. Plaintiff's Access to Courts Claims Fails to State a Claim .......... 29
M. Plaintiff's Parole Board Claims Also Fail to State a Claim .......... 30
N. Plaintiff Fails to State A Claim for the Denial of Religious Services .......... 33
O. Plaintiff's Classification Claims Fails to State a Claim for Relief .......... 36
P. Plaintiff's Disciplinary-Related Claims Fail to State a Claim for Relief .......... 36
Q. Plaintiff Fails to State a Claim for Searches, Seizures, or Privacy .......... 39
R. Plaintiff's Personal Property Claim Warrants No Relief .......... 41

III. Conclusion .......... 42

IV. Certificate of Compliance .......... 43

Certificate of Service .......... 44

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abdur-Rahman v. Michigan Dep't of Corr.*,
65 F.3d 489 (6th Cir. 1995) ....................2

*Alspaugh v. McConnell*,
643 F.3d 162 (6th Cir. 2011) ....................12

*Anderson v. Less*,
No. 14-3167, 2014 U.S. App. LEXIS 25015 (6th Cir. 2014) ....................14, 15

*Argue v. Hofmeyer*,
80 F. App'x 427 (6th Cir. 2003) ....................21

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ....................4, 5, 10, 27

*Balderson v. Mohr*,
No. 2:12-CV-235, 2012 U.S. Dist. LEXIS 60567 (S.D. Ohio May 1, 2012) ....................5, 10

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ....................3, 4

*Bell v. Wolfish*,
441 U.S. 520 (1979) ....................34, 40

*Berger v. Cuyahoga Cty. Bar Ass'n.,*
983 F.2d 718, 724 (6th Cir. 1993) ....................2

*Bittner v. Wilkinson*,
19 F. App'x. 310 (6th Cir. 2001) ....................7

*Blackmore v. Kalamazoo Cty.*,
390 F.3d 890 (6th Cir. 2004) ....................11

*Block v. Potter*,
631 F.2d 233 (3d Cir. 1980) ....................31

*Bogan v. Brunsman*,
No, 1:11-CV-259, 2013 U.S. Dist. LEXIS 12416, 2013 WL 360357
(S.D. Ohio Jan. 30, 2013) .................... *passim*

*Bounds v. Smith*,
430 U.S. 817 (1977) ....................29

*Bristow v. Eleby*,
Case No. 2:08-cv-0252, 2008 U.S. Dist. LEXIS 102607 (S.D. Ohio 2008) ...........................18

*Brooks v. Celeste*,
39 F.3d 125 (6th Cir. 1994) ...........................13

*Brooks v. Dutton*,
751 F.2d 197 (6th Cir. 1985) ...........................41

*Brown v. Brown*,
46 Fed. Appx. 324 (6th Cir. 2002)...........................22

*Brown v. Va. Dep't of Corr.*,
No. 6:07cv33, 2009 WL 87459 (Jan. 9, 2009)...........................26

*Brown v. Voorhies*,
Case No. 1:07cv101, 2009 U.S. Dist. LEXIS 18802 (S.D. Ohio 2009) ...........................19

*Browning v. Pennerton*,
633 F. Supp. 2d 415 (E.D. Ky. 2009) ...........................17, 25

*Buchanon v. Mohr*,
Civil Action 2:16-cv-279, 2016 U.S. Dist. LEXIS 121432 (S.D. Ohio 2016) ...........................12

*Bullock v. McGinnis*,
5 F. App'x 340 (6th Cir. 2001) ...........................9, 10, 16

*Carter v. Tucker*,
69 F. App'x 678 (6th Cir. 2003) ...........................38

*Carter v. Tucker*,
No. 03–5021, 2003 WL 21518730 (6th Cir. July 1, 2003)...........................23

*Cash v. Reno*,
No. 97-5220, 1997 WL 809982 (6th Cir. Dec. 23, 1997)...........................36

*Christopher v. Harbury*,
536 U.S. 403 (2002)...........................29, 30

*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983)...........................28

*Conway v. Wilkinson*,
Case No. 2:05cv820, 2007 U.S. Dist. LEXIS 21177 (S.D. Ohio 2007) ...........................25

*Copeland v. Machulis*,
57 F.3d 476 (6th Cir. 1995) ...........................41

*Cornwell v. Dahlberg*,
963 F.2d 912 (6th Cir. 1992) ....................39

*Cotten v. Schotten*,
No. 95-4085, 1997 WL 299386 (6th Cir. June 4, 1997) ....................28

*Couch v. Jabe*,
No. 11-00034, 2012 WL 3043105 (W.D. Va. July 25, 2012) ....................28

*Crawley v. Parsons*,
No. 7:15cv647, 2017 WL 1013120 (W.D. Va. Mar. 17, 2017) ....................26

*Cuco v. Fed. Med. Center-Lexington*,
Civil Action No. 05-CV-232-KSF, 2006 U.S. Dist. LEXIS 49711
(E.D. Ky. 2006) ....................13

*Cunningham v. Jones*,
567 F.2d 653 (6th Cir.1977) ....................26

*Cutter v. Wilkinson*,
544 U.S. 709 (2005) ....................35

*Davis v. Berghuis*,
No. l:12–CV–258, 2012 WL 3116360 (W.D. Mich. July 31, 2012) ....................7

*Davis v. Strickland*,
No. 2:09-CV-015, 2009 WL 2998980 (S.D. Ohio Sept. 15, 2009) ....................20

*Delk v. Moran*,
No. 7:16cv554, 2018 WL 1513296 (W.D. Va. Mar. 27, 2018) ....................26

*Dellis v. Corr. Corp. of Am.*,
257 F.3d 508 (6th Cir.2001) ....................22

*Dotson v. Wilkinson*,
477 F. Supp. 2d 838 (N.D. Ohio 2007) ....................12

*Dugas v. Wittrup*,
Civil Action 2:15CV67, 2015 U.S. Dist. LEXIS 10962 (S.D. Ohio 2015) ....................18

*Enyart v. Ohio, Department of Rehabilitation and Corr.*,
Case No. 2:16-cv-161, 2017 U.S. Dist. LEXIS 17350 (S.D. Ohio 2017) ....................9, 10

*Farmer v. Brennan*,
511 U.S. 825 (1994) .................... *passim*

*Fisher v. McGinnis*,
No. 00-1155, 2000 WL 1828486 (6th Cir. Dec. 5, 2000) ....................34

*Flagg Bros. v. Brooks*,
436 U.S. 149 (1978)....5

*Flanory v. Bonn*,
604 F.3d 249 (6th Cir. 2010) ....16

*Fredette v. Hemingway*,
65 Fed.Appx. 929 (6th Cir. 2003)....2

*Gant v. Campbell*,
4 F. App'x 254 (6th Cir. 2001) ....17, 24

*Gibbs v. Hopkins*,
10 F.3d 373 (6th Cir. 1993) ....41

*Givens v. Jones*,
900 F.2d 1229 (8th Cir. 1990) ....23

*Golson v. Mohr*,
Case No. 2:13-cv-373 (S.D. Ohio 2013) ....2

*Gomez v. Grossheim*,
901 F.2d 686 (8th Cir. 1990) ....1

*Goudlock v. Blankenship*,
No. 1:13-CV-1215, 2015 WL 5730219 (N.D. Ohio Sept. 28, 2015)....37

*Grand Trunk W. R.R. Co. v. Consolidated Rail Corp.*,
746 F.2d 323 (6th Cir. 1984) ....29

*Green v. Tudor*,
685 F. Supp.2d 678 (W.D. Mich. 2010) ....7

*Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex*,
442 U.S. 1 (1979)....30

*Grinter v. Knight*,
532 F.3d 567 (6th Cir. 2008) ....7

*Haight v. Thompson*,
No. 5:11CV–P118–R, 2011 WL 4473143 (W.D. Ky. September 26, 2011)....7

*Hall v. Thompson*,
Civil Action No. 3:16-cv-P476-DJH, 2016 U.S. Dist. LEXIS 163535
(W.D. Ky. 2016) ....9

*Halliburton v. Sunquist*,
59 F. App'x. 781 (6th Cir. 2003) ....20

*Hamilton v. Eleby*,
341 Fed. App'x. 168 (6th Cir. 2009) ....................24

*Hampton v. Hobbs*,
106 F.3d 1281 (6th Cir. 1997) ....................31

*Harbin—Bey v. Rutter*,
420 F.3d 571 (6th Cir. 2005) ....................38

*Harden-Bey v. Rutter*,
524 F.3d 789 (6th Cir. 2008) ....................4

*Harrill v. Blount County, TN.*,
55 F.3d 1123 (6th Cir.1995) ....................8

*Harris v. Truesdell*,
79 F. App'x. 756 (6th Cir. 2003) ....................38

*Harrison v. Ohio Dept. of Rehabilitation & Corr.*,
90 Misc. 2d 32 (Ohio Ct. of Claims 1997) ....................16

*Helling v. McKinney*,
509 U.S. 25 (1993)....................23

*Hensley v. Kampshaefer*,
Civil Action No. 3:07CV-616-H, 2009 U.S. Dist. LEXIS 1478
(W.D. Ky. 2009) ....................42

*Heyerman v. Cnty. of Calhoun*,
680 F.3d. 642 (6th Cir. 2012) ....................5, 10

*Hicks v. Meko*,
2009 WL 2043556 (E. D. Ky.) ....................11

*Hodges v. Wilson*,
No. 07-249, 2008 U.S. Dist. LEXIS 125609, 2008 WL 5049742
(W.D. Pa. Nov. 25, 2008) ....................9, 16

*Hudson v. Palmer*,
468 U.S. 517 (1984)....................34, 40, 41

*Hutto v. Finney*,
437 U.S. 678 (1978)....................22

*Ivey v. Wilson*,
832 F.2d 950 (6th Cir. 1987) ....................8, 23, 40

*Jackson v. Hamlin*,
61 F. App'x 131 (6th Cir. 2003) ....................................................................................36

*Jackson v. Jamrog*,
411 F.3d 615 (6th Cir. 2005) ...........................................................................21, 31

*Johnson v. Bredesen*,
624 F.3d 742 (6th Cir. 2010) ....................................................................................21

*Johnson v. Cowling*,
Case No. 2:19-cv-12448, 2019 U.S. Dist. LEXIS 149942 (E.D. Mich. 2019)........................39

*Jones v. McKinney*,
No. 97-6424, 1998 U.S. App. LEXIS 32665, 1998 WL 940242
(6th Cir. Dec. 23, 1998) ..........................................................................................36

*Kapp v. Booker*,
Civil Action No. 05-402-JMH, 2006 U.S. Dist. LEXIS 6370 (E.D. Ky. 2006) ......................14

*Keenan v. Marker*,
23 F. App'x. 405 (6th Cir. 2001) ..............................................................................7, 8

*Kelly v. McLain*,
No. 08-cv-10448, 2008 WL 4791951 (E.D. Mich. Oct. 28, 2008).........................................26

*Kensu v. Haigh*,
87 F.3d 172 (6th Cir. 1996) ........................................................................................2

*Knecht v. Collins*,
903 F. Supp. 1193 (S.D. Ohio 1995) ............................................................................8

*Knop v. Johnson*,
977 F.2d 996 (6th Cir. 1992) ......................................................................................30

*Krause v. Leonard*,
352 F. App'x. 933 (5th Cir. 2009) ..............................................................................20

*LaFlame v. Montgomery Cty. Sheriff's Dep't*,
3 F. App'x. 346 (6th Cir. 2001) ..................................................................................12

*Lakhani v. Seneca Cty. Sheriff's Office*,
Case No. 3:10 CV 00011, 2011 U.S. Dist. LEXIS 78424 (N.D. Ohio 2011)...........................9

*Lawson v. Warner*,
2015 WL 880987 (W.D. Wash. Mar. 2, 2015) ...............................................................30

*Lee v. Pauldine*,
No. 1:12-cv-077, 2013 WL 65111 (S.D. Ohio Jan. 4, 2013)....37

*Levin v. Childers*,
101 F.3d 44 (6th Cir.1996) ....8

*Lewis v. Casey*,
518 U.S. 343 (1996)....23, 29, 30

*Linger v. Akram*,
23 Fed. App'x. 248 (6th Cir. 2001) ....32

*Lovely v. Hughes*,
No. 96-5536, 1997 WL 112386 (6th Cir. Mar. 12, 1997)....32

*Lunsford v. Bennett*,
17 F.3d 1574 (7th Cir. 1994) ....23

*Lyons v. United States*,
Case No. 4:03 CV 0244, 2007 U.S. Dist. LEXIS 98798 (N.D. Ohio 2007)....13

*Mabry v. Ramirez*,
No. 2:06cv103, 2007 WL 4190398 (N.D. W. Va. Nov. 21, 2007)....26

*MacArthur v. Marshall County Jail*,
Case No. 1:13-00078, 2014 U.S. Dist. LEXIS 151315 (M.D. Tenn. 2014)....22

*Martin v. Mohr*,
Case No. 3:16-cv-2807, 2018 U.S. Dist. LEXIS 108329 (N.D. Ohio 2018)....9

*Mayrides v. Chaudhry*,
43 Fed. Appx. 743, 2002 WL 1359366 (6th Cir. 2002)....31

*McCree v. Sherrod*,
No. 09-cv-601, 2010 WL 850117 (S.D. Ill. Mar. 5, 2010)....20

*McMahon v. Fischer*,
446 F. App'x 354 (2d Cir. 2011) ....16

*Meachum v. Fano*,
427 U.S. 215 (1976)....9, 36

*Mertik v. Blalock*,
983 F.2d 1353 (6th Cir. 1993) ....31

*Michael v. Ghee*,
411 F.Supp.2d 813 (N.D. Ohio February 1, 2006) ....32, 33

*Midkiff v. Adams County Reg'l Water Dist.*,
409 F.3d 758 (6th Cir. 2005) ....................................................................................32

*Miles v. Bradshaw*,
Case No. 1:15CV1560, 2017 U.S. Dist. LEXIS 208630 (N.D. Ohio 2017)...........................31

*Miller v. Blackwelder*,
No. 4:07-cv-9, 2008 U.S. Dist. LEXIS 60407, 2008 WL 2940534
(E.D. Tenn. July 24, 2008)..........................................................................................15

*Moody v. Daggett*,
429 U.S. 78, 97 S. Ct. 274, 50 L. Ed. 2d 236 (1976).................................................21, 36, 38

*Moorman v. Thalacker*,
83 F.3d 970 (8th Cir. 1996) ....................................................................................1, 2

*Murphy v. Dowd*,
975 F.2d 435 (8th Cir. 1992) (per curiam)...................................................................23

*Murphy v. Grenier*,
406 F. App'x 972 (6th Cir. 2011) ..........................................................................5, 10

*Murphy v. Missouri Dept. of Corr.*,
769 F.2d 502 (8th Cir. 1985) ....................................................................................1

*Murray v. Evert*,
84 Fed. App'x. 553 (6th Cir. 2003) ..........................................................................8

*Murray v. Unknown Evert*,
84 F. App'x. 553 (6th Cir. 2003) ..............................................................................38

*Nelson v. Ohio Adult Parole Auth.*,
Case No. 1:14-cv-01530, 2016 U.S. Dist. LEXIS 48352 (N.D. Ohio 2016).....................31, 33

*Newell v. Brown*,
981 F.2d 880 (6th Cir.1992) ....................................................................................32

*Newsom v. Norris*,
888 F.2d 371 (6th Cir.1989) ....................................................................................23

*Nwaebo v. Hawk-Sawyer*,
83 F. App'x 85 (6th Cir. 2003) ..................................................................................5

*O'Lone v. Estate of Shabazz*,
482 U.S. 342 (1987)...................................................................................................34

*O'Quinn v. Brown*,
No. 92-2183, 1993 WL 80292 (6th Cir. Mar. 22, 1993)......................................................36

*Olim v. Wakinekona*,
461 U.S. 238, 103 S. Ct. 1741, 75 L. Ed. 2d 813 (1983)....................................................9, 36

*Owens v. Hutchinson*,
79 F. App'x. 159 (6th Cir. 2003) ..........................................................................................12

*Parratt v. Taylor*,
451 U.S. 527, 101 S. Ct. 1908, 68 L. Ed. 2d 420 (1981).........................................................41

*Patterson v. Mintzes*,
717 F.2d 284 (6th Cir. 1983) ..................................................................................................22

*Peterkin v. Jeffes*,
855 F.2d 1021 (3d Cir. 1988)...................................................................................................23

*Pollock v. Marshall*,
845 F.2d 656 (6th Cir.1988) ....................................................................................................34

*Procunier v. Martinez*,
416 U.S. 396 (1974)................................................................................................................34

*Ramos v. Lamm*,
639 F.2d 559 (10th Cir. 1980) ................................................................................................14

*Randall v. Wyrick*,
642 F.2d 304 (8th Cir. 1981) ..................................................................................................14

*Rauch v. Day & Night Mfg. Corp.*,
576 F.2d 697 (6th Cir. 1978) ....................................................................................................4

*Reeves v. Mohr*,
No. 4:11-cv-2062, 2012 WL 275166 (N.D. Ohio Jan. 31, 2012) ...........................................37

*Reilly v. Vadlamudi*,
No. 11-1251, 2012 U.S. App. LEXIS 10614 (6th Cir. 2012) .............................................5, 10

*Reynolds v. Wagner*,
128 F.3d 166 (3d Cir.1997)......................................................................................................15

*Rhodes v. Chapman*,
452 U.S. 337 (1981)...........................................................................................................19, 20

*Rimmer-Bey v. Brown*,
62 F.3d 789 (6th Cir. 1995) ....................................................................................................31

*Roaden v. Goins*,
No. 3-15-CV-404-PLR-CCs, 2015 U.S. Dist. LEXIS 143017
(E.D. Tenn. 2015) ...................................................................................................................22

*Salyers v. Massamore*,
Civil Action No. 4:13CV-10-M, 2013 U.S. Dist. LEXIS 103432 (W.D. Ky. 2013) ....23, 29

*Sanchez v. Vild*,
891 F.2d 240 (9th Cir. 1989) ....13

*Sango v. Lewis*,
Case No. 1:14-cv-342, 2-14 U.S. Dist. LEXIS 97464 (W.D. Mich. 2014) ....16

*Shehee v. Latrell*,
199 F.3d 295 (6th Cir. 1999) ....6

*Smiley v. Tennessee*,
No. 1:16-CV-469-HSM-SKL, 2017 U.S. Dist. LEXIS 145663 (E.D. Tenn. 2017) ....3

*Smith v. Bradley*,
53 F.3d 332 (6th Cir. 1995) ....27, 28

*Spain v. Procunier*,
600 F.2d 189 (9th Cir. 1979) ....22

*Spivey v. Doria*,
1994 U.S. Dist. LEXIS 3527, No. 91 C 4169 (N.D. Ill. March 24, 1994) ....23

*Stoudemire v. Mich. Dep't of Corr.*,
705 F.3d 560 (6th Cir. 2013) ....39

*Strickler v. Waters*,
989 F.2d 1375 (4th Cir. 1993) ....20

*Thaddeus-X v. Blatter*,
175 F.3d 378 (6th Cir. 1999) ....8, 9, 10

*Thomas v. Coble*,
55 F. App'x 748 (6th Cir. 2003) ....12

*Thompson v. Oppy*, No. 1:15-CV-621,
2017 WL 6154402 (S.D. Ohio Dec. 8, 2017) ....37

*Thornburgh v. Abbott*,
490 U.S. 401 (1989) ....34

*Turner v. Safley*,
482 U.S. 78, 107 S. Ct. 2254, 96 L. Ed. 2d 64 (1987) ....27, 40

*United States v. Conley*,
453 F.3d 674 (6th Cir. 2006) ....................41

*Waldrop v. Evans*,
871 F.2d 1030 (11th Cir. 1989) ....................13

*Walker v. Mintzes*,
771 F.2d 920 (6th Cir. 1985) ....................35

*Washington v. Reno*,
35 F.3d 1093 (6th Cir. 1994) ....................27

*Wells v. Schofield*,
No. 3:14-1913, 2015 U.S. Dist. LEXIS 117824 (M.D. Tenn. 2015)....................20

*White v. Corr. Med. Servs. Inc.*,
94 F. App'x 262 (6th Cir. 2004) ....................14, 15

*Wilkinson v. Austin*,
545 U.S. 209 (2005)....................38

*Williams v. Lindamood*,
526 F. App'x 559 (6th Cir. 2013) ....................38

*Williams v. McLemore*,
247 Fed. Appx. 1 (6th Cir. 2007)....................17, 25

*Wilson v. Collins*,
517 F.3d 421 (6th Cir. 2008) ....................40, 41

*Wilson v. Seiter*,
501 U.S. 294 (1991)....................21

*Wilson v. Yaklich*,
148 F.3d 596 (6th Cir.1998) ....................21

*Wolfel v. Timmerman-Cooper*,
Case No. 2:07-cv-1079, 2008 U.S. Dist. LEXIS 100083 (S.D. Ohio 2008) ...............31, 32, 33

**Statutes, Codes & Rules**

28 U.S.C. § 2201 .......... 29

42 U.S.C. § 1915 .......... 42

42 U.S.C. § 1983 .......... *passim*

Fed. R. Civ. P. 8(a)(2) .......... 3

Fed. R. Civ. P. 12(b)(6) .......... 3, 4

# MEMORANDUM

## I. Introduction

On August 23, 2018, Plaintiff filed a 64-page, 85 Count putative class action Amended Complaint ("Complaint") purporting to seek declaratory, injunctive and monetary relief on behalf of more than 100 class representatives, prisoners who insist that while being held in Ohio's Protective Control ("PC") Units they are being deprived of various rights claimed to be secured under the United States Constitution, including such things as the right to smoke and to collect fines otherwise levied upon vendors by the Ohio Department of Rehabilitation and Correction. Doc. 24, PageID 269, 287.

Notably, the class action has not been certified. Nevertheless, Plaintiff's voluminous and scattershot Complaint goes into exquisite detail regarding the alleged shortcomings befalling PC inmates incarcerated in Ohio's prisons. Yet, Plaintiff's meticulous articulation ignores the fact that he (they) have no constitutional right to the claims asserted. First and foremost, there is no liberty interest in assignment to any particular prison or unit of a prison. *Moorman v. Thalacker*, 83 F.3d 970, 973 (8th Cir. 1996) (citing *Meachum v. Fano*, 427 U.S. 215, 224 (1976)). "[A] prisoner enjoys no constitutional right to remain in a particular institution and generally is not entitled to due process protections prior to . . . a transfer." *Murphy v. Missouri Dept. of Corr.*, 769 F.2d 502, 503 (8th Cir. 1985).

Second, prison transfers may be made for a variety of reasons and may be based on informed predictions of what would best serve institutional security or the safety and welfare of the inmate. *Gomez v. Grossheim,* 901 F.2d 686 (8th Cir. 1990) (citing *Meachum v. Fano*, 427 U.S. at 224). "[C]onstitutionally speaking, assignments are discretionary, so long as they are not done for prohibited or invidious reasons and do not rise to independent constitutional violations on their

own weight." *Moorman v. Thalacker*, 83 F.3d at 973 (citing *Vitek v. Jones*, 445 U.S. 480 (1980); *Sisneros v. Nix,* 884 F. Supp. 1313, 1346 (S.D. Iowa 1995)).

Third, according to ODRC's Offender Search website, sole Plaintiff, Ted Palladeno (665-479), has recently been transferred to the Lake Erie Correctional Institution in Ashtabula County. See https://appgateway.drc.ohio.gov/OffenderSearch/Search/Details/A665479. Critically, the Lake Erie Correctional Institution, privately owned and operated by CoreCivic, (a national corporation formerly known as CCA or Corrections Corporation of America), http://www.correctionscorp.com/facilities/lake-erie-correctional-institution, is not one of the five2 prisons in which Plaintiff alleges PC inmates are subjected to unconstitutional conditions of confinement as set forth in Counts 1-85 of the Complaint.

When an inmate files suit seeking injunctive relief against prison officials at the institution of his incarceration based upon those officials' allegedly wrongful conduct and that inmate is subsequently transferred, courts routinely dismiss the injunctive relief claims as moot. *Golson v. Mohr*, Case No. 2:13-cv-373 (S.D. Ohio 2013) (citing *Sossamon v. Texas*, 131 S.Ct. 1651, 1669-70, 179 L. Ed. 2d 700 (2011). See also, *Kensu v. Haigh,* 87 F.3d 172, 175 (6th Cir. 1996) (concluding that inmate's claims for injunctive relief were rendered moot upon inmate's transfer from the prison about which he complained); *Abdur-Rahman v. Michigan Dep't of Corr.,* 65 F.3d 489, 491 (6th Cir. 1995) (inmate's request for injunctive relief mooted upon transfer from relevant prison). This is because an inmate's transfer ends the alleged violations of his or her constitutional rights, which "render[s] the court unable to grant the requested relief." *Berger v. Cuyahoga* Cty. *Bar Ass'n.*, 983 F.2d 718, 724 (6th Cir. 1993); *Fredette v.*

[2] Namely, Correctional Reception Center, Lorain Correctional Institution, oakwood Correctional Facility, Southern Ohio Correctional Facility,and Toledo Correctional Institution. Doc #: 24, PageID 243-44.

*Hemingway*, 65 Fed.Appx. 929, 931 (6th Cir. 2003). This is especially true in this case since the Lake Erie Correctional Institution is not only privately owned and operated, but also none of the defendants named in the Complaint are allegedly employed by CoreCivic. Doc #: 24, PageID 244-46. Nor is CoreCivic a state actor who can be held liable under § 1983 since none of the wrongdoing alleged in the Complaint is attributable to it. *Smiley v. Tennessee*, No. 1:16-CV-469-HSM-SKL, 2017 U.S. Dist. LEXIS 145663, at * 24 (E.D. Tenn. 2017).

Thus, as described more fully below, Plaintiff's Complaint fails to allege any constitutional violations whether for damages or for declaratory or injunctive relief against any named defendant. Since a prison is not required to maintain a separate protective custody unit, assign every inmate to one who wants to be there, or provide opportunities to a PC inmate commensurate with those otherwise offered general population inmates, Plaintiff's Complaint should be dismissed.

## II. Law and Argument

### A. Standard of Review: Fed. R. Civ. P. 12(b)(6).

The Federal Rules of Civil Procedure require that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Rules authorize dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The Supreme Court of the United States has interpreted Rule 8(a) to mean that a plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Accordingly, a plaintiff's obligation to provide the grounds for his claimed entitlement to relief requires more than labels and conclusions such that a formulaic recitation of the elements of a cause of action will not do. *Id.* Instead, a complaint must contain "enough facts to state a claim

to relief that is plausible on its face," meaning it must nudge the claims "across the line from conceivable to plausible." *Id.* at 570.

In expanding upon *Twombly*'s "facial plausibility" test, the Supreme Court has held that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Thus, while the pleading standard announced in *Twombly* does not require "detailed factual allegations," it demands "more than an unadorned, the-defendant-unlawfully-harmed-me accusation" and asks for "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Therefore, "[n]aked assertions devoid of further factual enhancement" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.

Furthermore, although factual allegations are to be accepted as true, a court does not have to accept as true "a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555. In the context of civil rights actions, "conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim." *Harden-Bey v. Rutter*, 524 F.3d 789, 796 (6th Cir. 2008) (quoting *Lillard v. Shelby Cnty. Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996)). Therefore, a complaint will be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) if there is no law to support the claims made, if the facts alleged are insufficient to state a claim, or if on the face of the complaint there is an insurmountable bar to relief. *Rauch v. Day & Night Mfg. Corp.,* 576 F.2d 697, 702 (6th Cir. 1978).

Plaintiff's Complaint, though quite lengthy, falls short on the specifics, not only because there is no law to support the claims he makes, but also because the facts alleged are insufficient to state a claim. For all of these reasons, Plaintiff's Complaint should be dismissed.

**B. Plaintiff Fails to State a § 1983 Claim Against Any Named Defendant.**

To state a §1983 claim, Plaintiff must allege that a person acting under color of state law deprived him of a right secured by the Constitution or federal law. *Flagg Bros. v. Brooks*, 436 U.S. 149, 155-157 (1978). In other words, to establish liability under § 1983 Plaintiff must plead that each named defendant was personally responsible for the unconstitutional actions which allegedly injured him. *Balderson v. Mohr*, No. 2:12-CV-235, 2012 U.S. Dist. LEXIS 60567, at *2 (S.D. Ohio May 1, 2012); *Heyerman v. Cnty. of Calhoun*, 680 F.3d. 642, 647 (6th Cir. 2012) ("Persons sued in their individual capacities under § 1983 can be held liable based only on their own unconstitutional behavior."); *Murphy v. Grenier*, 406 F. App'x 972 (6th Cir. 2011) ("Personal involvement is necessary to establish section 1983 liability").

Accordingly, the collective acts of multiple defendants, much less unidentified John and/or Jane Does, cannot be ascribed to an individual named defendant; instead, Plaintiff must state a plausible constitutional violation against each and every named defendant he is attempting to sue. *Reilly v. Vadlamudi*, No. 11-1251, 2012 U.S. App. LEXIS 10614, at *10 (6th Cir. 2012) (citing *Heyne v. Metro. Nashville Pub. Schs.*, 655 F.3d 556, 564 (6th Cir. 2011)); *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution"); *Nwaebo v. Hawk-Sawyer*, 83 F. App'x 85, 86 (6th Cir. 2003) ("[A] complaint must allege that the defendants were personally involved in the alleged deprivation of federal rights") (citing *Rizzo v. Goode*, 423 U.S. 362, 371 (1976)).

Thus, "*respondeat superior*" or supervisory liability is not cognizable under § 1983. "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable unless the supervisor either encouraged the specific incident of misconduct or in some other way

directly participated in it. At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Shehee v. Latrell*, 199 F.3d 295, 300 (6th Cir. 1999). Nor will simple awareness or the failure to act impose liability. Instead, "liability under § 1983 must be based on active unconstitutional behavior and cannot be based upon 'a mere failure to act.'" *Id.* (quoting *Salehpour v. University of Tennessee*, 159 F.3d 199, 206 (6th Cir. 1998).

By contrast with these pleading requirements, the Complaint does no more than use catch phrases, alleging without any factual support such things as the named defendants "wantonly willfully and deliberately" denied Plaintiff essential medical, psychiatric and psychological care, Doc. 24, PageID 232; the named defendants' decisions assigning security levels and protective control classifications are arbitrary and capricious, pursuant to vague and overbroad criteria, *id*.; and the named defendants are aware of but indifferent to the serious consequences of long-term solitary confinement and overcrowding on inmates. *Id*. In so doing the Complaint remains non-compliant with the pleading requirements of § 1983 since to state a claim Plaintiff must plead that each government-official defendant, through the official's own individual actions, violated the Constitution. This Plaintiff has not done.

Instead, and despite its length, the Complaint fails to make any specific allegation about any named defendant, making it impossible for the Court to infer the requisite personal involvement demanded of every § 1983 action. Attempting to ascribe the collective acts of multiple defendants to individual defendants without demonstrating any personal involvement, the Complaint fails to state a plausible constitutional violation against anyone and, therefore, must be dismissed.

### C. There is No Constitutional Right to An Effective Grievance System.

Count 1 of the Complaint not only fails to make any specific allegation about any named defendant, but also it is predicated on the proposition that the inmate grievance system somehow violates the Fourteenth Amendment. Doc. 24, PageID 246. However, there is simply no constitutional liability for failure to provide an effective prison grievance system. *Keenan v. Marker,* 23 F. App'x. 405, 407 (6th Cir. 2001) (the wrongful denial of a prison grievance does not violate any federal right, as there is no inherent constitutional right to an effective grievance procedure). Indeed, even the wrongful denial of a prison grievance by a prison official does not violate any federal constitutional right. *Grinter v. Knight*, 532 F.3d 567, 576 (6th Cir. 2008) (the denial of administrative grievances or the failure to act by prison officials does not subject supervisors to liability under § 1983); *Bittner v. Wilkinson,* 19 F. App'x. 310, 313 (6th Cir. 2001) (state inmate did not plead a viable § 1983 claim when he alleged prison officials denied or disregarded his grievances over incidents in which inmate was purportedly subjected to retaliation by prison officials).

Nor does an inmate have a constitutional or statutorily protected right to a grievance response. *Green v. Tudor,* 685 F. Supp.2d 678 (W.D. Mich. 2010) (the law is clear that the allegations that an official ignored a prisoner's letters are insufficient to establish liability).

Likewise, the failure of prison officials to follow internal regulations and/or policies regarding grievances does not constitute a constitutional violation. *See Davis v. Berghuis,* No. l:12–CV–258, 2012 WL 3116360, at *10 (W.D. Mich. July 31, 2012) ("Indeed, Plaintiff's claim of "misconduct" appears to rest on the fact that Defendants did not comply with prison regulations, but that fact is not sufficient to state a claim on its own."); *Haight v. Thompson,* No. 5:11CV–P118–R, 2011 WL 4473143, at *3 (W.D. Ky. September 26, 2011) ("A prison official's failure to

follow internal rules and regulations does not alone state a constitutional violation....”). To the contrary, the mere violation of state prison policies and procedures does not violate the federal constitution. *Levin v. Childers,* 101 F.3d 44, 46 (6th Cir.1996); *Harrill v. Blount County, TN.,* 55 F.3d 1123, 1125 (6th Cir.1995) (state law cannot create a federal constitutional right).

It is therefore curious that Plaintiff’s Complaint struggles to allege that the grievance process is being blocked, Doc. 24, PageID 247, while concomitantly insisting that he exhausted all available administrative remedies before filing this action. *Id*. at PageID 246. Even if there was constitutional liability here, Plaintiff cannot have it both ways. Certainly, if Plaintiff exhausted his administrative remedies as he insists, his ability to grieve his claims could not have been impeded. Therefore, regardless whether Plaintiff’s ability to access the grievance system was marginally affected by some unidentified person, because there is no constitutional right to an effective grievance system, *Keenan v. Marker,* 23 F. App’x. at 407, and no personal involvement of any named defendant is alleged, Counts 1-2 of the Complaint should be summarily dismissed.

**D. The Complaint Fails to State a Retaliation Claim.**

To state a retaliation claim, Plaintiff must allege three elements: 1) that he was engaged in protected conduct; 2) that an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and 3) that the adverse action was motivated at least in part by Plaintiff’s protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 390 (6th Cir. 1999). Furthermore, Plaintiff has the burden of proof regarding each of these elements. *Murray v. Evert,* 84 Fed. App’x. 553, 536 (6th Cir. 2003).

But despite the retaliation claims Plaintiff asserts in Counts 3-4, there is no constitutional right to an effective grievance system, *id.,* no constitutional right to be free from harassment or neglect, *Ivey v. Wilson*, 832 F.2d 950 (6th Cir. 1987); *Knecht v. Collins*, 903 F. Supp. 1193, 1203

(S.D. Ohio 1995); *Lakhani v. Seneca Cty. Sheriff's Office,* Case No. 3:10 CV 00011, 2011 U.S. Dist. LEXIS 78424 (N.D. Ohio 2011); no constitutional right to be single-celled, *Enyart v. Ohio, Department of Rehabilitation and Corr.,* Case No. 2:16-cv-161, 2017 U.S. Dist. LEXIS 17350 (S.D. Ohio 2017); no constitutional right to a particular security classification, *Hall v. Thompson*, Civil Action No. 3:16-cv-P476-DJH, 2016 U.S. Dist. LEXIS 163535 (W.D. Ky. 2016); and no constitutional right to an interstate transfer, *Martin v. Mohr,* Case No. 3:16-cv-2807, 2018 U.S. Dist. LEXIS 108329 (N.D. Ohio 2018); *Meachum v. Fano*, 427 U.S. at 223-29; *Olim v. Wakinekona,* 461 U.S. 238, 103 S. Ct. 1741, 75 L. Ed. 2d 813 (1983) (no right under federal law allowing a prisoner to prevent a transfer to another facility or giving him any choice concerning the facility where he will be incarcerated).

Certainly, none of these things subject a prisoner to atypical and significant hardship in relation to the ordinary incidents of prison life. *Id. (*citing *McMahon v. Fischer*, 446 F. App'x 354, 356-57 (2d Cir. 2011) (finding that double bunking did not subject "the prisoner to atypical and significant hardship . . . in relation to the ordinary incidents of prison life"); *Bullock v. McGinnis*, 5 F. App'x 340, 341-42 (6th Cir. 2001) ("a prisoner has no inherent constitutional right to be confined in a particular prison or to be held in a specific security classification"); *Hodges v. Wilson*, No. 07-249, 2008 U.S. Dist. LEXIS 125609, 2008 WL 5049742, at *2 (W.D. Pa. Nov. 25, 2008) ("[L]iving in a double-cell is an expected ordinary incident of prison life, [and] retaining single-cell status is not a protected liberty interest.") (citing *Austin v. Chesney*, No. 93-4010, 1995 U.S. Dist. LEXIS 12090, 1995 WL 498720, at *3 (E.D. Pa. Aug. 22, 1995)).

Since Plaintiff was not asserting a constitutionally protected right when he grieved any of the above, he has failed to satisfy prong one under *Thaddeus-X.* See *Thaddeus-X v. Blatter*, 175 F.3d at 390. Moreover, even taking the allegations contained in the Complaint as true, Doc. 24,

PageID 248, Plaintiff has failed to allege any personal involvement by any named defendant that would establish his or her deliberate indifference. See *Enyart v. Ohio, Department of Rehabilitation and Corr.,* Case No. 2:16-cv-161, 2017 U.S. Dist. LEXIS 17350, at * 7-8.

Likewise, since none of the deprivations of which Plaintiff complains would subject a prisoner to atypical and significant hardship in relation to the ordinary incidents of prison life, *Bullock v. McGinnis*, 5 F. App'x 340, 341-42 (6th Cir. 2001), Plaintiff also fails prong two of the *Thaddeus-X* test. Without the protected conduct and adverse action required under *Thaddeus-X,* and having failed to show the personal involvement of any named defendant, Counts 3-4 should be dismissed.

**E. Plaintiff's Health Care Related Claims Should Be Dismissed.**

To establish liability under § 1983, Plaintiff must plead who is personally responsible for the unconstitutional actions which injured him. *Balderson v. Mohr*, No. 2:12-CV-235, 2012 U.S. Dist. LEXIS 60567, at *2 (S.D. Ohio May 1, 2012); see also *Heyerman v. Cnty. of Calhoun*, 680 F.3d. 642, 647 (6th Cir. 2012) ("Persons sued in their individual capacities under § 1983 can be held liable based only on their own unconstitutional behavior."); *Murphy v. Grenier*, 406 F. App'x 972 (6th Cir. 2011) ("Personal involvement is necessary to establish section 1983 liability."). Accordingly, the collective acts of multiple defendants cannot be ascribed to an individual defendant; rather, the plaintiff must state a plausible constitutional violation against each defendant. See *Reilly v. Vadlamudi*, No. 11-1251, 2012 U.S. App. LEXIS 10614, at *10 (6th Cir. 2012) (citing *Heyne v. Metro. Nashville Pub. Schs.*, 655 F.3d 556, 564 (6th Cir. 2011)); see also *Ashcroft v. Iqbal*, 556 U.S. at 676.

By contrast with these pleading requirements, Plaintiff's vague and conclusory claims regarding medical care that was allegedly denied or otherwise grossly inadequate (Count 5) contain

no specific allegations against any named defendant. Equally important, the Complaint concedes that ODRC has treated Plaintiff's condition for years. Doc. 24, PageID 250.

Yet, to sustain a claim for inadequate medical treatment, a plaintiff must demonstrate that a defendant acted with deliberate indifference to a serious medical condition. A sufficiently serious medical condition is one that has been diagnosed by a physician as mandating treatment or is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. See *Blackmore v. Kalamazoo Cty*., 390 F.3d 890, 897 (6th Cir. 2004).

Its corollary, deliberate indifference, occurs only when an official knows of but consciously disregards an excessive risk to an inmate's health and safety. *Farmer v. Brennan,* 511 U.S. 825, 836-37 (1994). Therefore, to state a § 1983 claim for medical deliberate indifference, Plaintiff must not only allege that he suffered from an objectively serious medical condition of which a specifically-named official was aware, but also that the official was actively and deliberately indifferent to his medical care.

But in the present case, Plaintiff admits that ODRC has provided him with treatment; it's just not the treatment he prefers. Although it is clear that Plaintiff is dissatisfied with the care he has received while incarcerated, when prison officials provide medical care in good faith but it nonetheless fails to promptly or completely restore the prisoner to good health, those officials are not "deliberately indifferent" to the prisoner's health and safety. *Hicks v. Meko,* 2009 WL 2043556 (E. D. Ky.). Even if the prisoner disagrees with the treatment provided, so long as it meets minimum standards of adequacy, a mere disagreement over medical judgment states no constitutional claim. *Id.* (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989) ("[W]e disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment.

Along with all other aspects of health care, this remains a question of sound professional judgment.").

Although it is alleged that those providing Plaintiff's medical care may have had a difference of opinion regarding the type of care he should receive, "a prisoner's difference of opinion regarding treatment does not rise to the level of an Eighth Amendment violation." *Id.* (quoting *DeFreeze v. Zuberi*, 39 F. App'x 137, 139 (6th Cir. 2002); see, e.g., *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011) (no deliberate indifference claim where the plaintiff "would have desired more aggressive treatment" but "was at no point denied treatment"); *Owens v. Hutchinson*, 79 F. App'x. 159, 161 (6th Cir. 2003) ("A patient's disagreement with his physicians over the proper medical treatment alleges no more than a medical malpractice claim, which is a tort actionable in state court, but is not cognizable as a federal constitutional claim"); *Thomas v. Coble*, 55 F. App'x 748, 749 (6th Cir. 2003) (inmate and medical provider's disagreement "over the preferred medication to treat [inmate's] pain . . . does not support an Eighth Amendment claim"); *LaFlame v. Montgomery Cty. Sheriff's Dep't*, 3 F. App'x. 346, 347 (6th Cir. 2001); *Dotson v. Wilkinson*, 477 F. Supp. 2d 838, 849 (N.D. Ohio 2007); *Buchanon v. Mohr,* Civil Action 2:16-cv-279, 2016 U.S. Dist. LEXIS 121432 (S.D. Ohio 2016)(because a prisoner's difference of opinion regarding treatment does not rise to the level of an Eighth Amendment violation, plaintiff failed to state a plausible constitutional claim). Therefore, Counts 5, 10, 13, 14, and 16 of the Complaint should be dismissed.

**F. Plaintiff's Formulary Claims Should Be Dismissed.**

Without alleging any named defendant's personal involvement, in Count 6 Plaintiff complains about medication substitution pursuant to ODRC's formulary. However, the policy behind changes in a prison formulary have not been shown to be outside those "of the kind that

the discretionary function was designed to shield." *Lyons v. United States,* Case No. 4:03 CV 0244, 2007 U.S. Dist. LEXIS 98798 (N.D. Ohio 2007) (citing *Montez v. U.S.*, 359 F.3d 392, 397 (6th Cir. 2004). Furthermore, there is no claim anywhere in the Complaint that any named defendants personally viewed a substituted medication as less effective.

*Cuco v. Fed. Med. Center-Lexington*, Civil Action No. 05-CV-232-KSF, 2006 U.S. Dist. LEXIS 49711 (E.D. Ky. 2006) is instructive here. In *Cuco,* an inmate plaintiff alleged that defendants' decision to continue to treat her anemia and dysmenorrhea with oral progesterone, notwithstanding recommendations by UKMC gynecologists to treat these conditions with Lupron, constituted deliberate indifference to her serious medical needs. Moreover, Ms. Cuco alleged, FMC medical staff told the UKMC physician that FMC would not allow Ms. Cuco to be given Lupron, either because it involved needles as an injectable medication, or because it was not stocked by the prison's formulary.

Notably, the district court concluded, either of these justifications, if asserted by the defendants, would appear to be a facially-sufficient penological justification for a prison to require an inmate patient to use a different, functionally-equivalent treatment methodology. But analyzed solely as a question of the choice between different, viable treatment regimens, the court ruled that *Cuco* failed to offer sufficient evidence to support an Eighth Amendment claim because the fact that an inmate (or even another physician) would choose a different course of treatment does not support a claim for relief. *Id*., at * 116 (citing *Durham v. Nu'Man*, 97 F.3d 862, 868-69 (6th Cir. 1996); *Brooks v. Celeste*, 39 F.3d 125, 128-29 (6th Cir. 1994); *Sanchez v. Vild,* 891 F.2d 240, 242 (9th Cir. 1989) (difference of opinion between doctors as to the need for surgery); *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989) ("[W]e disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment. Along with all other aspects of health

care, this remains a question of sound professional judgment."); *Randall v. Wyrick,* 642 F.2d 304, 308 (8th Cir. 1981); *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980).

In sum, Plaintiff's Complaint alleges no facts which would support a claim that any named defendant followed any particular plan of treatment solely in order to harm him. See *Kapp v. Booker*, Civil Action No. 05-402-JMH, 2006 U.S. Dist. LEXIS 6370 (E.D. Ky. 2006) ("The foregoing fails to demonstrate any indifference, let alone "deliberate indifference" to Kapp's medical needs. It shows that Kapp was provided with an abundance of medical care, care that was adjusted over time to conform as best as possible to the treatment regimen prescribed by Kapp's outside doctors with what was acceptable under the BOP's formulary guidelines and reasonable in light of the care that can be provided in a prison setting"). Accordingly, Counts 6 and 11 should be dismissed.

**G. Plaintiff's Over-the-Counter Medication and Co-Pay Claims Should Be Dismissed.**

Clearly Plaintiff objects to paying for over-the-counter medication and to being charged a co-pay in advance of receiving medical, psychological, dental or optical care. Doc. 24, PageID 252-56. But whether Plaintiff is unwilling to pay for these services or merely prefers to spend his money in other ways does not implicate constitutional concerns because requiring an inmate to pay for his own medical treatment by budgeting his monthly income is not unconstitutional. *Anderson v. Less*, No. 14-3167, 2014 U.S. App. LEXIS 25015 (6th Cir. 2014); *White v. Corr. Med. Servs. Inc.*, 94 F. App'x 262, 264 (6th Cir. 2004) ("It is constitutional to charge inmates a small fee for health care where indigent inmates are guaranteed service regardless of ability to pay").

Of course, the right to adequate medical care is not denied to an inmate who is perceived to have unwisely spent the funds in his account at the very time medical treatment is needed.

*Anderson v. Less*, No. 14-3167, 2014 U.S. App. LEXIS 25015 (6th Cir. 2014). "While the Eighth Amendment's prohibition against cruel and unusual punishment requires jails to provide basic medical care to inmates, there is no requirement that jails provide the medical care free of cost." *Miller v. Blackwelder*, No. 4:07-cv-9, 2008 U.S. Dist. LEXIS 60407, 2008 WL 2940534, at *6 (E.D. Tenn. July 24, 2008); *White*, 94 F. App'x at 264.

Not only does the Eighth Amendment not guarantee prisoners unlimited access to the medical treatment of their choice, *Reynolds v. Wagner*, 128 F.3d 166, 173-75 (3d Cir.1997), but also there is no suggestion in the Complaint that Plaintiff is indigent. Indeed, at the time Plaintiff filed his Complaint he was paid $17.00 a month. Doc. 24, PageID 290. Plaintiff cannot pick and choose what he prefers to spend his money on while claiming he cannot pay for the medical services he seeks.

Since he is paid $17.00 a month, unless his account dips below the State's indigency amount, Plaintiff is required to pay a nominal fee for his medical care regardless what that might mean for his other purchases. *Id.* Although he must make choices, Plaintiff has not been denied appropriate medical care in violation of the Eighth Amendment. Moreover, although Plaintiff claims that requiring him to purchase over-the-counter medications from the commissary and make a co-pay before receiving medical care constitutes deliberate indifference, there is no law supporting any such claim. Nor does the Complaint identify anyone, much less a named defendant, as being personally responsible therefor.[3]

Perhaps as important, Plaintiff does not allege any consequences as a result of being required to purchase over-the-counter products from the prison store. While the deprivation of hygiene items for an extended period of time could present a serious risk to an inmate's health or

[3] For the very same reasons, there is no constitutional requirement for the State to pay for Plaintiff's laundry products, electricity, manuals, etc. Doc. 24, PageID 288-291. Therefore, Counts 78-85 should also be dismissed.

safety, see *Flanory v. Bonn*, 604 F.3d 249, 254 (6th Cir. 2010), Plaintiff does not allege that any named defendants were aware of, much less deliberately indifferent to, such a risk. Thus, he does not state an Eighth Amendment claim, or any other § 1983 claim, against them. *Sango v. Lewis*, Case No. 1:14-cv-342, 2-14 U.S. Dist. LEXIS 97464 (W.D. Mich. 2014). Accordingly, Counts 7, 8, 9, 12, 15, and 17 should be dismissed.

**H. Plaintiff's Single-Occupancy Cell Claims Fail to State a Claim for Relief.**

Despite Plaintiff's claims otherwise, Doc. 24, PageID 257, an inmate has no constitutional right to be housed in a single-occupancy cell or to be incarcerated in a particular prison. *McMahon v. Fischer*, 446 F. App'x 354, 356-57 (2nd Cir. 2011) (finding that double bunking did not subject "the prisoner to atypical and significant hardship . . . in relation to the ordinary incidents of prison life"); *Bullock v. McGinnis*, 5 F. App'x 340, 341-42 (6th Cir. 2001) ("a prisoner has no inherent constitutional right to be confined in a particular prison or to be held in a specific security classification"); *Hodges v. Wilson*, No. 07-249, 2008 U.S. Dist. LEXIS 125609, 2008 WL 5049742, at *2 (W.D. Pa. Nov. 25, 2008) ("[L]iving in a double-cell is an expected ordinary incident of prison life, [and] retaining single-cell status is not a protected liberty interest." (citing *Austin v. Chesney*, No. 93-4010, 1995 U.S. Dist. LEXIS 12090, 1995 WL 498720, at *3 (E.D. Pa. Aug. 22, 1995)).

Under the Eighth Amendment, "prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. at 833. Accordingly, PC housing is afforded those inmates who face a significant and verifiable risk of physical harm from a specific inmate or group of inmates in the general population. Nonetheless, an inmate is placed in PC only if there is evidence that protection is warranted and there are no reasonable alternatives. *Harrison v. Ohio Dept. of Rehabilitation & Corr.*, 90 Misc. 2d 32 (Ohio Ct. of Claims 1997).

To establish liability under the Eighth Amendment, Plaintiff must show that a named defendant was aware of and deliberately indifferent "to a substantial risk of serious harm." *Farmer v. Brennan,* 511 U.S. at 828. To do so, Plaintiff must make both an objective showing that he is incarcerated under conditions that pose a substantial risk of serious harm as well as a subjective showing that a named defendant(s) knew of and disregarded an excessive risk to Plaintiff's safety. *Id.* at 837.

While one inmate's threat to another is sufficiently serious to satisfy the objective component, an inmate's "general concern" about safety from unidentified inmates is not. See *Williams v. McLemore*, 247 Fed. Appx. 1, 10 (6th Cir. 2007) (citing *Gant v. Campbell*, 4 F. App'x 254, 256 (6th Cir. 2001)). Thus, the risk of harm "must be based upon more than [the inmate's] subjective fear." *Browning v. Pennerton*, 633 F. Supp. 2d 415, 430 (E.D. Ky. 2009); *Bogan v. Brunsman*, No, 1:11-CV-259, 2013 U.S. Dist. LEXIS 12416, 2013 WL 360357, at *6 (S.D. Ohio Jan. 30, 2013) report and recommendation adopted, No. 1:11-CV-259, 2013 U.S. Dist. LEXIS 26762 (S.D. Ohio Feb. 27, 2013) ("[I]dentification of a prisoner's enemies is critical to the prison's ability to protect a prisoner because it is the prison officials, not the prisoner, who must determine whether there is a substantial risk of harm that warrants a transfer or other action.").

While a plaintiff may "live[] in constant fear of whom the [d]efendants may place in the cell with him," such subjective fear alone is not enough because generalized allegations cannot establish a deliberate indifference claim. See *Gant v. Campbell*, 4 F. App'x 254, 256 (6th Cir. 2001) (finding no Eighth Amendment violation for failure to protect where the plaintiff did not identify any particular gang members whom he feared); see also *Bogan*, 2013 U.S. Dist. LEXIS 12416, 2013 WL 360357, at *6 (same). Though Plaintiff alleges that Ohio's PC units mix inmates who are gang members, mentally ill, homosexual, vulnerable, aggressive, classified in multiple

security levels, and under disciplinary action, Doc. 24, PageID 258-59, housing such allegedly "incompatible types" together, Doc. 24, PageID 259, is not unconstitutional. To the contrary, it is the prison officials, not the prisoner, who must determine whether there is a substantial risk of harm warranting separation. *Bogan v. Brunsman*, No, 1:11-CV-259, 2013 U.S. Dist. LEXIS 12416, 2013 WL 360357, at *6 (S.D. Ohio Jan. 30, 2013) report and recommendation adopted, No. 1:11-CV-259, 2013 U.S. Dist. LEXIS 26762, 2013 WL 754262 (S.D. Ohio Feb. 27, 2013).

Thus, ODRC maintains procedures for physically separating particular inmates "when there is reason to believe that the inmates could be harmed by being in close proximity to one another, and/or their presence together could jeopardize the security and safety of the institution, staff, and/or other inmates." *Dugas v. Wittrup*, Civil Action 2:15CV67, 2015 U.S. Dist. LEXIS 10962, at *3-4 (S.D. Ohio 2015) (quoting ODRC Department Policy No. 53-CLS-05). See also ODRC Department Policy No. 53-CLS-05(V) (last viewed October 7, 2019) available at https://www.drc.ohio.gov/policies-procedures.

Separations may be "institution separations" or "local separations." *Id*. at (VI). An institution separation is "[a]n order wherein two or more inmates are not assigned to general population in the same institution due to a concern for the safety and security of the institution, staff and/or other inmates." *Id*. at (IV). A local separation is "[a]n order wherein two or more inmates are not permitted to be assigned to the same living and/or work area, and are not permitted simultaneous involvement in the same recreational or leisure time activities to ensure they are not in close proximity with one another." *Id*.

While confined in PC or in segregation Plaintiff cannot prevail on his deliberate indifference claims. *Bristow v. Eleby,* Case No. 2:08-cv-0252, 2008 U.S. Dist. LEXIS 102607, at *7 (S.D. Ohio 2008) (under such circumstances, it is not likely that [plaintiff] could demonstrate

that the prison officials charged with protecting him from assaultive behavior by other inmates have disregarded the risk and had taken no reasonable steps to assure his personal safety"). See also *Brown v. Voorhies*, Case No. 1:07cv101, 2009 U.S. Dist. LEXIS 18802, at * 12 (S.D. Ohio 2009) ("Plaintiff has been in protective control since 1998 and has also been in segregation due to his high security classification. The Court cannot find that such limited access to Plaintiff, without something more, amounts to deliberate indifference).

Moreover, and despite Plaintiff's claims otherwise, Doc. 24, PageID 256-57, the Supreme Court has previously held that prison overcrowding, by itself, does not constitute a constitutional violation, nor does the Constitution mandate prisons in which inmates are totally free of discomfort. *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981).

For instance, in *Rhodes* the Supreme Court addressed an allegation of overcrowding based on the double celling of inmates within a 63 square foot cell. *Rhodes v. Chapman*, 452 U.S. at 339-41. The district court found such conditions unconstitutional citing the inmates long terms of imprisonment; the fact the prison housed more inmates than its design capacity; studies that suggested that inmates be given greater living space; the fact that the inmates spent most of their time in their cells; and the fact that the condition was not temporary. *Id.* at 348.

Nonetheless, the Supreme Court found that the conditions in question were not enough to constitute cruel and unusual punishment. *Id.* at 347. To the contrary, the Court emphasized, the overcrowding did not lead to a deprivation of other basic needs; did not increase violence among inmates; and did not "inflict[] unnecessary or wanton pain [and were not] grossly disproportionate to the severity of crimes warranting imprisonment." *Id.* at 348-49.

Since *Rhodes*, numerous courts, including both the Sixth Circuit and district courts sitting therein, have emphasized that double or triple celling inmates, without more, is insufficient to state

a constitutional claim. *Halliburton v. Sunquist,* 59 F. App'x. 781, 782 (6th Cir. 2003) ("[D]ouble-celling, by itself, does not violate the Eighth Amendment. . . . Nor did [the plaintiff] allege that he was denied basic human needs such as food, warmth, or sanitation by virtue of the allegedly overcrowded conditions."); *Davis v. Strickland*, No. 2:09-CV-015, 2009 WL 2998980, at *3 (S.D. Ohio Sept. 15, 2009) (following *Rhodes* in holding that double-celling, standing alone, was not a violation of the Eighth Amendment); *Strickler v. Waters,* 989 F.2d 1375, 1382 (4th Cir. 1993) ("Finally, it is well established that 'double or triple celling of inmates is not per se unconstitutional.'") (quoting *Williams v. Griffin*, 952 F.2d 820, 824 (4th Cir.1991)); *McCree v. Sherrod*, No. 09-cv-601, 2010 WL 850117, at *2 (S.D. Ill. Mar. 5, 2010) ("Although the Supreme Court has not yet spoken on the issue of triple-celling, at least two Courts of Appeal have done so, concluding that triple-celling is not per se unconstitutional."); see also *Krause v. Leonard,* 352 F. App'x. 933, 936 n.10 (5th Cir. 2009) ("[The inmate] has not presented any evidence that putting three men in a two-person cell inflicts unnecessary or wanton pain or is grossly disproportionate to the severity of crimes warranting imprisonment.").

Contrary to Plaintiff's arguments, the Supreme Court has not established any particular percentage of overpopulation as a permissible limit under the Eighth Amendment. *Wells v. Schofield*, No. 3:14-1913, 2015 U.S. Dist. LEXIS 117824, at *6 (M.D. Tenn. 2015). In an apparent effort to finesse this problem, Plaintiff alleges that PC inmates are deprived of the same opportunities to enjoy such things as outdoor recreation, jobs, and access to the law library otherwise given general population inmates. Doc. 24, PageID 261.

But Plaintiff has no liberty interest in being provided the same opportunities as general population inmates. Federal courts consistently have found that prisoners have no constitutionally protected liberty interest in prison vocational, rehabilitation, employment, or educational programs

based on the Fourteenth Amendment. See, e.g., *Moody v. Daggett*, 429 U.S. 78, 88 n.9, 97 S. Ct. 274, 50 L. Ed. 2d 236 (1976) (Due Process Clause not implicated by prisoner classification and eligibility for rehabilitative programs, even where inmate suffers "grievous loss"); *Argue v. Hofmeyer*, 80 F. App'x 427, 429 (6th Cir. 2003) (prisoners have no constitutional right to rehabilitation, education or jobs).

Certainly, "[t]he Equal Protection Clause prevents states from making distinctions that (1) burden a fundamental right; (2) target a suspect class; or (3) intentionally treat one individual differently from others similarly situated without any rational basis." *Johnson v. Bredesen*, 624 F.3d 742, 746 (6th Cir. 2010). However, Plaintiff's allegations do not implicate a fundamental right, *id*., and prisoners are not considered a suspect class for purposes of equal protection litigation." *Jackson v. Jamrog,* 411 F.3d 615, 619 (6th Cir. 2005); *see also Wilson v. Yaklich,* 148 F.3d 596, 604 (6th Cir.1998). Moreover, prisoners in protective custody clearly are not similarly situated to prisoners in the general population since the express purpose of protective custody is to safeguard prisoners from a known risk of physical injury at the hands of another prisoner(s), leaving Plaintiff with the rational basis standard by which to analyze his Constitutional claims. And "[u]nder rational basis scrutiny, government action amounts to a constitutional violation only if it 'is so unrelated to the achievement of any combination of legitimate purposes that the court can only conclude that the government's actions were irrational.'" *Id.*(quoting *Warren v. City of Athens,* 411 F.3d 697, 710 (6th Cir. 2005)).

Of course a total denial of outdoor recreation could violate the Eighth Amendment if the prison official responsible for that condition was deliberately indifferent to an inmate's needs, had no penological justification for the condition, and allowed the condition to persist for an unreasonably long period of time. See *Wilson v. Seiter,* 501 U.S. 294, 302-3 (1991) (finding that

an inmate who claims that his living conditions amount to cruel and unusual punishment must establish that defendants possessed the requisite mental state); *Hutto v. Finney*, 437 U.S. 678, 686-87 (1978) (holding that "a filthy, overcrowded cell and a diet of 'gruel' might be tolerable for a few days and intolerably cruel for weeks or months"); *Patterson v. Mintzes*, 717 F.2d 284, 289 (^t Cir. 1983) (holding that "[i]t is generally recognized that a total or near-total deprivation of exercise or recreational opportunity, without penological justification, violates Eighth Amendment guarantees"); *Spain v. Procunier,* 600 F.2d 189, 199-200 (9th Cir. 1979) (holding that deprivation of outdoor exercise for several years violated the Eighth Amendment).

However, Plaintiff's assertion that he now gets one hour of outside recreation per day (but received none for four-months at some point in 2015-2016), Doc. 24, PageID 262, fails to raise a right to relief above a speculative level, since denial of outdoor recreation for a reasonable amount of time, even without penological justification, does not violate the Eighth Amendment. *Roaden v. Goins*, No. 3-15-CV-404-PLR-CCs, 2015 U.S. Dist. LEXIS 143017, at * 5 (E.D. Tenn. 2015).

Neither are temporary deprivations of personal hygiene and grooming items actionable under the Eighth Amendment. *MacArthur v. Marshall County Jail,* Case No. 1:13-00078, 2014 U.S. Dist. LEXIS 151315, at *8 (M.D. Tenn. 2014) (citing *Harris v. Fleming*, 839 F.2d 1232, 1235 (7th Cir. 1988)); *Brown v. Brown*, 46 Fed. Appx. 324, 325-26 (6th Cir. 2002) (holding that a prisoner who was merely inconvenienced because he was unable to purchase personal hygiene supplies for several months due to a hold on his account failed to state an Eighth Amendment claim). Accordingly, this assertion fails to state a claim.

Similarly, the Sixth Circuit has consistently found that prisoners have no constitutionally protected liberty interest in prison employment under the Fourteenth Amendment. See, e.g., *Dellis v. Corr. Corp. of Am.,* 257 F.3d 508, 511 (6th Cir.2001) (district court properly dismissed as

frivolous the plaintiff's claim that he was fired from his prison job); *Newsom v. Norris,* 888 F.2d 371, 374 (6th Cir.1989) (no constitutional right to prison employment); *Ivey v. Wilson,* 832 F.2d 950, 955 (6th Cir.1987) ( "[N]o prisoner has a constitutional right to a particular job or to any job"); *Carter v. Tucker,* No. 03–5021, 2003 WL 21518730, at *2 (6th Cir. July 1, 2003) (same). Thus, whether or not Plaintiff was deprived of jobs while in PC fails to state a claim.

Nor is there a constitutional right to access to a law library. *Salyers v. Massamore*, Civil Action No. 4:13CV-10-M, 2013 U.S. Dist. LEXIS 103432, at * 18 (W.D. Ky. 2013). Although here is a constitutional right to access to courts, Plaintiff does not allege any actual prejudice to any litigation. See *Lewis v. Casey*, 518 U.S. 343, 351 (1996).

Plaintiff also alleges that PC inmates suffer from excessive noise. Doc. 24, PageID 264. But regarding excessive noise, the risk of injury due to noise conditions must be "so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk." *Helling v. McKinney*, 509 U.S. 25, 35 (1993). Plaintiff's speculative and unsupported assertions fall far below this standard, and are insufficient to state a claim. See *Lunsford v. Bennett*, 17 F.3d 1574, 1580 (7th Cir. 1994) (subjecting a prisoner to a few hours of periodic loud noises that annoy but do not injure does not demonstrate a disregard for the prisoner's welfare); *Murphy v. Dowd*, 975 F.2d 435, 437 (8th Cir. 1992) (per curiam) (finding excessive noise claim meritless); *Givens v. Jones*, 900 F.2d 1229, 1234 (8th Cir. 1990)(court found noise is "a fact of life" and that the claim "on its face appears almost specious"; inmate failed to claim the noise was result of malicious intent or even reckless disregard for his well-being); *Peterkin v. Jeffes*, 855 F.2d 1021, 1027 (3d Cir. 1988) ("the noise in the cells, while it may be irritating to some prisoners, cannot fairly be said to inflict cruel and unusual punishment"); *Spivey v. Doria*, 1994 U.S. Dist. LEXIS 3527, No. 91 C 4169 (N.D. Ill. March 24, 1994), 1994 WL 97756,

at *11 (finding no constitutional violation where inmate only alleges noise level caused him to lose sleep and made him irritable; "Federal courts are not the forums to determine proper lighting and noise levels in jails").

Simply stated, Plaintiff's generalized allegations regarding PC housing conditions not only fail to allege any constitutional violation, but also fail to identify any named defendant allegedly personally involved therefor. For both of these reasons, Plaintiff cannot establish a deliberate indifference claim. See also *Gant v. Campbell,* 4 F. App'x 254, 256 (6th Cir. 2001) (finding no Eighth Amendment violation for failure to protect where plaintiff did not identify any particular gang members whom he feared); see also *Bogan*, 2013 U.S. Dist. LEXIS 12416, 2013 WL 360357, at *6 (where defendants placed plaintiff in segregation pending a transfer to protective control, finding no constitutional violation). Accordingly, Counts 18-33 and 57-58 should be dismissed.

**I. Plaintiff's Claims Regarding Personal Safety Should Be Dismissed.**

While Plaintiff alleges the named defendants have failed to protect him from serious physical harm, Doc. 24, PageID 265, to establish liability under § 1983 Plaintiff must show that a named defendant was deliberately indifferent "to a substantial risk of serious harm." *Farmer v. Brennan*, 511 U.S. at 828. To do so Plaintiff must make both an objective showing that he is incarcerated under conditions that pose a substantial risk of serious harm as well as a subjective showing that the named defendant(s) actually knew of and disregarded an excessive risk to Plaintiff's safety. *Id.* at 837.

Yet nowhere does the Complaint identify any person to whom Plaintiff allegedly provided any notice regarding any alleged harm. Doc. 24, PageID 266. Equally important, unlike the risk of a transfer about which the defendant in *Hamilton v. Eleby*, 341 Fed. App'x. 168, 171 (6th Cir. 2009) was undisputedly aware, no such knowledge can be inferred from the allegations contained

in Plaintiff's Complaint. Doc. 24, PageID 266. Nor can any knowledge be inferred from Plaintiff's general allegation that the named defendants, collectively, failed to keep general population inmates separated from PC prisoners, forced inmates out of PC and returned them to general population, or denied them separation despite the fact that there was a need for protection. Doc. 24, PageID 266-269.

Critically, the general concern about safety alleged in the Complaint does not suffice to state a claim. See *Williams v. McLemore*, 247 Fed. Appx. 1, 10 (6th Cir. 2007) (citing *Gant v. Campbell*, 4 F. App'x. 254, 256 (6th Cir. 2001)). Rather, the risk of harm "must be based upon more than [the inmate's] subjective fear." *Browning v. Pennerton*, 633 F. Supp. 2d 415, 430 (E.D. Ky. 2009); *Bogan v. Brunsman*, No, 1:11-CV-259, 2013 WL 360357, at *6 (S.D. Ohio 2013) report and recommendation adopted, No. 1:11-CV-259, 2013 WL 754262 (S.D. Ohio Feb. 27, 2013) ("[I]dentification of a prisoner's enemies is critical to the prison's ability to protect a prisoner because it is the prison officials, not the prisoner, who must determine whether there is a substantial risk of harm that warrants a transfer or other action."). Though confined in PC to facilitate his safety, it is clear Plaintiff wants more. Nonetheless, utterly lacking in the prerequisites for a § 1983 claim, Counts 34-38 and 57-58[4] of the Complaint should be dismissed.

**J. Plaintiff's Food Services Complaints Should Also Be Dismissed.**

Although Plaintiff alleges that his meal portions are inadequate, Doc. 24, PageID 269, the Complaint alleges no facts suggesting that he suffered the type of substantial deprivation of food and/or adequate nutrition that is required to prevail under the Eighth Amendment. Sixth Circuit law makes it clear that the deliberate and unnecessary withholding of food essential to normal health can constitute the deliberate indifference to medical needs that violates the Eighth

[4] Nor is visitation a liberty interest which enjoys constitutional protection. *Conway v. Wilkinson*, Case No. 2:05cv820, 2007 U.S. Dist. LEXIS 21177, at * 10 (S.D. Ohio 2007).

Amendment. See *Cunningham v. Jones*, 567 F.2d 653, 656 (6th Cir.1977). However, to establish such a claim, Plaintiff would need to allege facts suggesting that a named defendant acted with "deliberate indifference" to his basic needs. "Deliberate indifference" is comprised of both an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. at 835-37. The objective component requires that the deprivation alleged be "sufficiently serious," while the subjective component requires a plaintiff to establish that the government officials had a "sufficiently culpable state of mind." *Id.* at 834. Meanwhile, Plaintiff's Complaint does neither.

Indeed, meeting neither deliberate indifference prong, the Complaint contains no facts whatsoever suggesting that Plaintiff suffered any serious physical ailment from the alleged deprivation. *Kelly v. McLain*, No. 08-cv-10448, 2008 WL 4791951, at *3 (E.D. Mich. Oct. 28, 2008) ("Food served to inmates need not be appetizing. The Eighth Amendment merely requires that it be prepared and served in a sanitary environment and that it be adequate to meet an inmate's essential nutritional needs.") (citing *Heinz v. Teschendorf*, No. 05-cv-73470, 2006 WL 2700813, at *8-9 (E.D. Mich.2006); see also *U.S. v. Michigan*, 680 F.Supp. 270, 275 (W.D. Mich. 1988)).

Moreover, Plaintiff does not sufficiently allege that any named defendant was personally involved in any of the events giving rise to his § 1983 claims. Not only does the Complaint fail to allege the "type of personal involvement required," to state a claim for relief under § 1983, *Mabry v. Ramirez*, No. 2:06cv103, 2007 WL 4190398, at *6 (N.D. W. Va. Nov. 21, 2007), but also it does not support a reasonable inference that any named defendant knew about the acts of which Plaintiff complains. See, e.g., *Delk v. Moran*, No. 7:16cv554, 2018 WL 1513296, at *6 (W.D. Va. Mar. 27, 2018); *Crawley v. Parsons*, No. 7:15cv647, 2017 WL 1013120, at *5 n.6 (W.D. Va. Mar. 17, 2017); *Brown v. Va. Dep't of Corr.*, No. 6:07cv33, 2009 WL 87459, at *13 (Jan. 9, 2009).

Simply stated, Plaintiff's naked assertions are not enough to hold any named defendant personally liable for the food-related misconduct the Complaint alleges. See *Iqbal*, 556 U.S. at 678. Nor is there any constitutional requirement whatsoever that fines levied against a food service contractor for failing to abide by the terms of the contract be divided up among third-party inmates. Accordingly, Counts 39-42 of the Complaint should be dismissed.

**K. Plaintiff's Claims That He Was Overcharged Fail to State A Claim.**

Plaintiff also challenges the amount he was previously charged for phone services during his incarceration. The Supreme Court has recognized that "[p]rison walls do not form a barrier separating prison inmates from the protections of the Constitution," *Turner v. Safley*, 482 U.S. 78, 84, 107 S. Ct. 2254, 96 L. Ed. 2d 64 (1987), nor do they "bar free citizens from exercising their own constitutional rights by reaching out to those on the 'inside.'" *Id.* at 94-99." Thus, most courts that have addressed the issue have held that prisoners have a limited right to telephone access.

For instance, in *Washington v. Reno*, 35 F.3d 1093 (6th Cir. 1994), the Sixth Circuit recognized prisoners' First Amendment right to telephone access, but overruled the district court's injunction of a policy requiring that prisoner calls be paid for via inmate debit cards. In so doing, the *Washington* court held that, "telephone access is 'subject to rational limitations in the face of legitimate security interests of the penal institution,'" *Washington*, 35 F.3d at 1100 (quoting *Strandberg v. City of Helena*, 791 F.2d 744, 747 (9th Cir.1986)).

A year later the Sixth Circuit relied on *Washington* in again holding that prisoners' right to use telephones to communicate with friends and family was subject to "rational limitations in the face of legitimate security interests of the penal institution." *Smith v. Bradley*, 53 F.3d 332 (6th Cir. 1995)(quoting *Strandberg*, 791 F.2d at 747). The *Smith* court further held that the "exact nature of telephone service to be provided to inmates is generally to be determined by prison

administrators, subject to court scrutiny for unreasonable restriction." *Id.* (quoting *Fillmore v. Ordonez*, 829 F. Supp. 1544, 1563-64 (D. Kan. 1993), *aff'd*, 17 F.3d 1436 (10th Cir. 1994)).

Thus, although prisoners have a First Amendment right to some telephone access, it is subject to reasonable limitations arising from the legitimate penological and administrative interests. *Id.* And, unsurprisingly, there is no authority for the proposition that prisoners are entitled to a specific rate for their telephone calls, nor does the Complaint allege any facts from which one could conclude that the rate charged was so exorbitant as to deprive prisoners of phone access altogether.

Moreover, even if Plaintiff was subject to diminished or delayed contact during some period of his imprisonment as a result of the fees he was charged to use the telephone or other prison services (such as Access, Secure Pak or J-Pay), he does not allege that alternative avenues of contact such as direct visitation or mail were foreclosed to him during those times. Thus, he has not shown that he suffered a significant injury to his First Amendment rights sufficient to state a claim under 42 U.S.C. § 1983. "[S]hort, non-content based delays in prison mail are not unreasonable and fail to state a constitutional question." *Cotten v. Schotten*, No. 95-4085, 1997 WL 299386, at *1 (6th Cir. June 4, 1997) (citing *Sizemore v. Williford*, 829 F.2d 608, 610 (7th Cir. 1987)). "[I]solated incidents of mail mishandling do not rise to the level of a constitutional violation." *Couch v. Jabe*, No. 11-00034, 2012 WL 3043105, at *8 (W.D. Va. July 25, 2012).

Furthermore, since the Complaint concedes that since 2015 the telephone rates have been slashed, Doc. 24, PageID 271, any request by the Plaintiff for declaratory or injunctive relief regarding the constitutionality of the fees charged for telephone service is moot because there is no longer any actual and continuing controversy between the parties that would cause an immediate and real threat of injury to him. See *City of Los Angeles v. Lyons,* 461 U.S. 95, 102-09

(1983). As such, there is simply no actual controversy between the parties that calls for either injunctive relief or a declaration of the rights and other legal relations of the parties. See 28 U.S.C. § 2201; *Grand Trunk W. R.R. Co. v. Consolidated Rail Corp*., 746 F.2d 323, 326 (6th Cir. 1984). For all of these reasons, along with the fact that the Complaint fails to allege the personal involvement of any named defendant in the alleged wrongdoing, Counts 43-44 should be dismissed.

**L. Plaintiff's Access to Courts Claims Fails to State a Claim.**

As previously stated, there is no constitutional right to have access to a law library. *Salyers v. Massamore*, Civil Action No. 4:13CV-10-M, 2013 U.S. Dist. LEXIS 103432, at * 18 (W.D. Ky. 2013). Therefore, Plaintiff cannot use the alleged inability to use the library to leverage an access to courts claim. This is because, while the First Amendment requires that inmates have "access to the courts [that] is adequate, effective, and meaningful," *Bounds v. Smith*, 430 U.S. 817, 822 (1977), a prisoner must allege that he or she was deprived of a particular non-frivolous claim to state a right-of-access claim. *Lewis v. Casey*, 518 U.S. 343, 353 (1996). But in this case Plaintiff has failed to identify any claim he wished to assert but could not due to the limited library access the Complaint alleges. *Christopher v. Harbury*, 536 U.S. 403, 416 (2002) ("Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant.").

Given the deference afforded to officials in carrying out their obligations in the course of managing prison affairs, courts have held that the Constitution does not require the implementation of particular means to satisfy this constitutional command. *Id.* at 830. Therefore, "[b]ecause *Bounds* did not create an abstract, freestanding right to a law library or legal assistance,

an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense." *Lewis v. Casey*, 518 U.S. at 351.

Thus, alleging only the deprivation of certain items — such as the library access allegedly at issue here — is insufficient: instead, Plaintiff must allege that he was deprived of a particular non-frivolous claim to state a claim for relief for a right-of-access claim. *Lewis*, 518 U.S. at 353. But in this case, Plaintiff fails to identify any claim whatsoever that he wished to assert. Therefore, his court access claim is subject to dismissal on that ground alone. *Christopher v. Harbury*, 536 U.S. 403, 416 ("Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant").

Perhaps even more important, state prison officials have no constitutional obligation to assist prisoners with access to the courts "for litigation that is not related to the inmate's incarceration." See *Knop v. Johnson*, 977 F.2d 996, 999 (6th Cir. 1992) (citing *John L. v. Adams*, 969 F.2d 228 (6th Cir. 1992)). Yet, nowhere does Plaintiff claim that the alleged violation of his access to the courts pertains to a matter related to his current sentence or confinement. Therefore, Plaintiff's allegation that he was denied access to the courts does not state a claim upon which relief can be granted. See *Lawson v. Warner*, No. C14-5100 RBL-KLS, 2015 WL 880987, at *6 (W.D. Wash. Mar. 2, 2015). It is also subject to dismissal because it fails to identify any named defendant's personal involvement in the alleged wrongdoing. Accordingly, Counts 45-51 should be dismissed.

**M. Plaintiff's Parole Board Claims Also Fail to State a Claim.**

The U.S. Supreme Court has held there "is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." *Greenholtz v.*

*Inmates of the Nebraska Penal and Correctional Complex*, 442 U.S. 1, 6 (1979); *Jackson v. Jamrog*, 411 F.3d 615, 618-19 (6th Cir. 2005). To the contrary, it is well settled that the Ohio parole statutes do not create a protected liberty interest for due process purposes. Therefore, the decision to grant or deny parole is entirely within the discretion of the Ohio Adult Parole Authority. *Nelson v. Ohio Adult Parole Auth*., Case No. 1:14-cv-01530, 2016 U.S. Dist. LEXIS 48352, at *8 (N.D. Ohio 2016) (citing *Jago v. Van Curen*, 454 U.S. 14, 20 (1981)). Accordingly, until his maximum sentence expires, Plaintiff has no liberty or property interest in being granted parole such that denying him parole infringes a fundamental right. *Id.*

Furthermore, Plaintiff has not shown that the state acted arbitrarily in considering factors not specifically enumerated in the statute. Although substantive due process protects inmates from arbitrary denials of parole based on impermissible criteria such as race, political beliefs or frivolous factors, such as eye color, even where a prisoner may not have a protected liberty interest, Plaintiff does not present any such allegations here. *Mayrides v. Chaudhry*, 43 Fed. Appx. 743, 2002 WL 1359366, at *2 (6th Cir. 2002); *Block v. Potter*, 631 F.2d 233, 236 n. 2 (3d Cir. 1980). To the contrary, criminal history and the seriousness of the offenses of conviction are rationally related to the legitimate government interest in protecting the public. See *Mayrides v. Chaudhry*, 43 Fed. Appx. 743, 2002 WL 1359366, at *2 (6th Cir. 2002).

If state action does not affect a suspect class or implicate a fundamental right,[5] rational basis review applies. *Wolfel v. Timmerman-Cooper*, Case No. 2:07-cv-1079, 2008 U.S. Dist. LEXIS 100083, at * 36 (S.D. Ohio 2008). Because Plaintiffs is not a member of a suspect class

[5]Denying Plaintiff parole due to his prior criminal history and the serious nature of his offenses does not shock the conscience. *Miles v. Bradshaw*, Case No. 1:15CV1560, 2017 U.S. Dist. LEXIS 208630 (N.D. Ohio 2017)). For this reason, a person attempting to assert a substantive due process claim on this basis "faces a virtually insurmountable uphill struggle." *Rimmer-Bey v. Brown*, 62 F.3d 789, 791 n. 4 (6th Cir. 1995) (citing *Rochin v. California*, 342 U.S. 165 (1952)); *Mertik v. Blalock*, 983 F.2d 1353, 1367-68 (6th Cir. 1993); see also *Hampton v. Hobbs*, 106 F.3d 1281, 1288 (6th Cir. 1997).

and parole does not implicate a fundamental right, afortiori the rational basis standard applies to Plaintiff's Complaint. *Id.*

Although Plaintiff contends that old law inmates are being treated differently from those who were sentenced after the passage of Senate Bill 2, Doc. 24, PageID 276, under rational basis review courts will uphold a governmental policy if there is a rational relationship between the state action and some legitimate government purpose. *Midkiff v. Adams County Reg'l Water Dist*., 409 F.3d 758, 770 (6th Cir. 2005). Rational basis review is deferential: "the governmental policy at issue will be afforded a strong presumption of validity […]." *Id*. "[U]nder rational basis review, a purported rational basis may be based on rational speculation unsupported by evidence or empirical data and need not have a foundation in the record." *Id*. Thus, the standard places a "severe burden" on plaintiffs such that they "must negate all possible rational justifications" of the state action. *Id*. (quotations and citations omitted).

It is therefore not surprising that the Sixth Circuit has held that a prisoner cannot support a violation of his equal protection rights simply by showing that other inmates were treated differently. *Newell v. Brown,* 981 F.2d 880, 887 (6th Cir.1992). Rather, he must show that he was victimized because of some suspect classification. *Id*.; see also *Lovely v. Hughes*, No. 96-5536, 1997 WL 112386, at * 1 (6th Cir. Mar. 12, 1997) (affirming district court's dismissal of §1983 claim alleging that denial of plaintiff's parole violated Fourteenth Amendment right of equal protection because similarly-situated prisoners were granted parole).

But Plaintiff cannot do so here. This is because inmates are not a suspect class for Equal Protection Clause purposes. *Michael v. Ghee,* 411 F.Supp.2d 813, 818 (N.D. Ohio February 1, 2006) (citing *Jackson v. Jamrog*, 411 F.3d 615, 618-19 (6th Cir. 2005)). For instance, in *Linger v. Akram,* 23 Fed. App'x. 248, 251 (6th Cir. 2001), the Sixth Circuit affirmed the district court's

denial of claims of denial of equal protection based on the Parole Board's refusal to grant parole after passage of Ohio's Senate Bill 2, stating:

> [N]o equal protection infraction arose from the petitioner's allegedly "unequal" imprisonment sentence, when compared to the more lenient penalties sustained by individuals sentenced under the July 1, 1996 statute, because the new law's non-retroactivity to persons sentenced prior to July 1, 1996 was rationally related to a legitimate state interest, namely "judicial economy" (citing, inter alia, *City of Cleburne, Texas v. Cleburne Living Center, Inc*., 473 U.S. 432, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985))[.]

Certainly, there are several rational reasons that could have motivated Ohio's legislature to require old law inmates to continue to serve their indeterminate sentences subject to Parole Board determinations. Among these are a desire to: 1) avoid passing retroactive legislation and altering the sentences of inmates already incarcerated; 2) give Ohio's old law inmates the incentive to obey prison regulations by keeping the parole system in place, which rewarded them for good behavior; and 3) acknowledge the seriousness of the convicted offenses. *Michael v. Ghee,* 411 F.Supp.2d 813, 818 (N.D. Ohio 2006); *Wolfel v. Timmerman-Cooper*, Case No. 2:07-cv-1079, 2008 U.S. Dist. LEXIS 100083, at * 38 (S.D. Ohio 2008).

Since Plaintiff has no due process rights to any Parole Board decision, *Nelson v. Ohio Adult Parole Auth*., Case No. 1:14-cv-01530, 2016 U.S. Dist. LEXIS 48352, at *8 (N.D. Ohio 2016) , the Complaint makes no effort whatsoever to negate all possible rational justifications for the legislative decision to treat old law inmates differently from those sentenced after the passage of Senate Bill 2, and because the Complaint fails to identify any named defendant personally involved in the alleged wrongful conduct, Counts 53-56 and 66 should be dismissed.

**N. Plaintiff Fails to State A Claim for the Denial of Religious Services.**

Without identifying any named defendant personally involved in any alleged wrongdoing, Plaintiff nonetheless claims that he has been unconstitutionally denied religious services, religious

meals, and group worship. Doc. 24, PageId 278. Prisoners have a First Amendment right to practice their religious beliefs. *Hudson v. Palmer*, 468 U.S. 517, 523 (1984). For this reason, prisoners must be provided "reasonable opportunities" to practice their religion. *Id*. Nevertheless, an inmate's First Amendment right to exercise his religious beliefs is not absolute. Instead it is subject to reasonable restrictions and limitations reasonably related to legitimate penological interests. *Bell v. Wolfish*, 441 U.S. 520, 549-51 (1979); *Pollock v. Marshall*, 845 F.2d 656, 658-60 (6th Cir.1988).

Accordingly, the First Amendment does not require that prison officials provide inmates with the best possible means of exercising their religious beliefs, nor does it require that general prison policies and concerns become subordinate to the religious desires of any particular inmate. Rather, the internal administration of a correctional facility remains a function legitimately left to the discretion of prison administrators. See *O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1987); *Bell v. Wolfish*, 441 U.S. at 547; *Procunier v. Martinez*, 416 U.S. 396, 405 (1974), overruled on other grounds by *Thornburgh v. Abbott*, 490 U.S. 401 (1989). It is therefore not surprising that, as the Complaint makes clear, while confined in PC, Plaintiff has been able to attend religious services, albeit on a sporadic, unplanned, last-minute basis, and not always on the day usually set aside for worship in accordance with a particular religion. Doc. 24, PageID 278. In other words, Plaintiff has been afforded reasonable access to religious services, religious meals and group worship, albeit qualified as a result of his protected status. *Id.*

Certainly "[p]rison officials have a recognized need to manage their prisons and control the movement of the inmate population in accordance with staffing and security issues." *Fisher v. McGinnis*, No. 00-1155, 2000 WL 1828486, at *2 (6th Cir. Dec. 5, 2000)(citing *Spies v. Voinovich*, 173 F.3d 398, 403-04 (6th Cir.1999)). Therefore, “courts have

consistently held that when prison officials offer evidence that security concerns prevent them from providing congregate religious services to inmates in administrative segregation, the deprivation is not violative of the first amendment so long as the inmates' rights of conscience are not infringed and they can request individual religious counseling." *Walker v. Mintzes,* 771 F.2d 920, 930 (6th Cir. 1985). And here, there are no allegations whatsoever in the Complaint that Plaintiff's rights of conscience have been infringed. Moreover, although the raison d'etre of PC confinement is security as the Complaint concedes, Plaintiff has most definitely not been denied all opportunities to practice his religion.

For instance, as Count 59 explains, religious services are held in PC. Doc. 24, PageID 278. And although Count 60 complains that Plaintiff has been told that to attend worship services he must do so with general population inmates, *id.,* both statements cannot be true. Furthermore, while the Complaint contends that PC prisoners must be kept separate from general population inmates at all times, *id.*, it is the prison officials, not the Plaintiff, who must determine whether there is a substantial risk of harm warranting his separation from other prisoners on any given occasion. *Bogan v. Brunsman*, No, 1:11-CV-259, 2013 WL 360357, at *6 (S.D. Ohio Jan. 30, 2013) report and recommendation adopted, No. 1:11-CV-259, 2013 U.S. Dist. LEXIS 26762 (S.D. Ohio Feb. 27, 2013).

In addition, Plaintiff complains in Count 61 that he is not being provided free religious books and symbols. Doc. 24, PageID 279-80. But a prison has no constitutional obligation to provide any such accouterments. See *Cutter v. Wilkinson,* 544 U.S. 709, 720 n.8 (2005) (the State is not required to pay for an inmate's devotional accessories) (citing *Charles v. Verhagen,* 348 F.3d 601, 605 (7th Cir. 2003) (overturning prohibition on possession of Islamic prayer oil but leaving

inmate with responsibility for purchasing the same)). For all of these reasons, Counts 59-61 should be dismissed.

**O. Plaintiff's Classification Claims Fail to State a Claim for Relief.**

The Supreme Court repeatedly has held that a prisoner has no constitutional right to be held in a specific security classification. See *Olim v. Wakinekona,* 461 U.S. 238, 245 (1983); *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976); *Meachum v. Fano*, 427 U.S. 215, 228-29 (1976). The Sixth Circuit has followed the Supreme Court's rulings in a variety of security classification challenges. See, e.g., *Cash v. Reno*, No. 97-5220, 1997 WL 809982, at *1-2 (6th Cir. Dec. 23, 1997) (prisoner's allegation that he was placed in a security level higher than warranted based on the information contained in his prison file failed to state a due process claim because he had no constitutional right to be held in a particular prison or security classification); *O'Quinn v. Brown*, No. 92-2183, 1993 WL 80292, at *1 (6th Cir. Mar. 22, 1993) (prisoner failed to state a due process or equal protection claim regarding his label as a "homosexual predator" because he did not have a constitutional right to a particular security level or place of confinement). Because Plaintiff does not have a constitutional right to a particular security level or classification, nor does he specify any named defendant personally involved in the alleged wrongdoing, he fails to state a due-process claim regarding his allegedly enhanced classification in the wake of three inmates' escape from PC. Thus Counts 62-65 should be dismissed.

**P. Plaintiff's Disciplinary-Related Claims Fail to State a Claim for Relief.**

To the extent Plaintiff intends to advance a claim against any named defendant for hearing a conduct report, "a prisoner has no constitutional right to be free from false accusations of misconduct." *Jackson v. Hamlin*, 61 F. App'x 131, 132 (6th Cir. 2003) (citing *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986)); see also *Jones v. McKinney*, No. 97-6424, 1998 U.S. App.

LEXIS 32665, 1998 WL 940242, at *1 (6th Cir. Dec. 23, 1998) (district court properly dismissed a complaint alleging that prison officials "deliberately issued a false disciplinary report" against the plaintiff as frivolous because "even if the disciplinary report was false, . . . a prisoner has no constitutionally protected immunity from being wrongly accused."); *Lee v. Pauldine*, No. 1:12-cv-077, 2013 WL 65111, at *8 (S.D. Ohio Jan. 4, 2013) ("Accepting as true plaintiff's allegation that defendant . . . filed a false conduct report against him, '[t]he act of filing false disciplinary charges does not itself violate a prisoner's constitutional rights'") (quoting *Spencer v. Wilson*, No. 6:11-00128-KSI, 2012 WL 2069658, at *6 (E.D. Ky. June 8, 2012)), adopted, 2013 U.S. Dist. LEXIS 23978 (S.D. Ohio Feb. 21, 2013)); *Reeves v. Mohr*, No. 4:11-cv-2062, 2012 WL 275166, at *2 (N.D. Ohio Jan. 31, 2012) ("Erroneous allegations of misconduct by an inmate do not constitute a deprivation of a constitutional right.").

Nor does a prisoner have a constitutional right to correct a conduct report, even if it contains factual errors. *Goudlock v. Blankenship*, No. 1:13-CV-1215, 2015 WL 5730219, at *6 (N.D. Ohio Sept. 28, 2015) (a prisoner has no clearly established constitutional right to a "correct" conduct report or to a certain kind of testimony at a disciplinary hearing) (collecting cases); *Reeves v. Mohr*, No. 4:11CV2062, 2012 WL 275166, at *2 (N.D. Ohio Jan. 31, 2012) (same). Thus, the Complaint fails to plausibly allege a due process claim regarding the reading of Plaintiff's conduct report. More specifically, Plaintiff's allegations are insufficient to implicate federal due process concerns because he has not alleged that any disciplinary action amounted to a deprivation of a constitutionally protected interest,[6] much less that any named defendant was individually involved in the alleged wrongdoing.

[6] While transfer to a supermax facility triggers due process considerations, those considerations do not apply here because Ohio's only supermax facility is the Ohio State Penitentiary. See *Thompson v. Oppy*, No. 1:15-CV-621, 2017 WL 6154402, at *1-2 (S.D. Ohio Dec. 8, 2017) (prisoner transferred from Toledo Correctional Institution to Southern Ohio Correctional Facility fails to state a § 1983 claim upon which relief may be granted with respect to his claim that his security classification was increased without due process).

"[T]he Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). "An inmate establishes a liberty interest when a change in conditions of confinement 'imposes atypical and significant hardship on [him] in relation to the ordinary incidents of prison life.'" *Williams v. Lindamood*, 526 F. App'x 559, 562 (6th Cir. 2013) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). "[A]n increase in security classification . . . does not constitute an 'atypical and significant' hardship in relation to the ordinary incidents of prison life because a prisoner has no constitutional right to remain incarcerated in a particular prison or to be held in a specific security classification." *Harbin—Bey v. Rutter*, 420 F.3d 571, 577 (6th Cir. 2005); see also *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976) (change in "prisoner classification" does not implicate a due process right); *Harris v. Truesdell*, 79 F. App'x. 756, 759 (6th Cir. 2003)(holding that neither "punishment of more than 60 days of punitive segregation" nor a change in security classification "give rise to a protected Fourteenth Amendment Liberty interest"); *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003) (holding that inmate's placement in disciplinary confinement or a change in security classification or housing assignment did not implicate the Due Process Clause).

Moreover, Plaintiff's disciplinary claims must be dismissed since a successful ruling would necessarily imply the invalidity of his disciplinary conviction and the punishment imposed. See *Murray v. Unknown Evert*, 84 F. App'x. 553, 555 (6th Cir. 2003) (plaintiff's claim that a finding of guilt is false is not cognizable under § 1983 because, if established, it would necessarily imply the invalidity of his disciplinary conviction; plaintiff must show his misconduct conviction has

been invalidated in order to state a cognizable § 1983 claim) (citing *Edwards v. Balisok*, 520 U.S. 641, 648 (1997); *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994)).

Plaintiff has not alleged that the challenged disciplinary proceedings resulted in the lengthening of his prison sentence, the withdrawal of good-time credits, or the deprivation of any necessities of life. Because Plaintiff does not have a constitutional right to a particular security level or housing assignment he cannot state a constitutional claim either for being forced out of PC for disciplinary reasons or for the denial of parole. Therefore, Counts 65-67 of the Complaint should be dismissed.

**Q. Plaintiff Fails to State a Claim for Searches, Seizures, or Privacy.**

Plaintiff claims that his Fourth Amendment rights were violated when he was strip searched in front of the other (male) PC prisoners in the gymnasium. Doc. 24, PageID 283. Under the Fourth Amendment, "a convicted prisoner maintains some reasonable expectations of privacy while in prison." *Cornwell v. Dahlberg*, 963 F.2d 912, 916 (6th Cir. 1992). See also *Stoudemire v. Mich. Dep't of Corr*., 705 F.3d 560, 572 n.2 (6th Cir. 2013). However, Plaintiff has not alleged that he was singled out for a search, that any search was overly invasive, or that the search was unrelated to a legitimate penological or security interest. See *Stoudemire*, 705 F.3d at 571-74.

Aside from Plaintiff's conclusory allegation that he that felt humiliated and demeaned, Plaintiff has failed to allege any facts that rise to the level of an actionable claim under the Fourth Amendment. *Johnson v. Cowling*, Case No. 2:19-cv-12448, 2019 U.S. Dist. LEXIS 149942, at * 4 (E.D. Mich. 2019) (citing *Green v. Santiago*, 224 F. Supp. 3d 154, 164 (D. Conn. 2016) ("accusations of humiliation and embarrassment caused by strip searches, on their own, do not state a claim under the Fourth Amendment"). Plaintiff does not allege that he was searched in

front of correction officers of the opposite sex, that the search was conducted in front of numerous other prisoners, or that the search was performed in an overly invasive way. *Id.* Nor does plaintiff allege that any named defendant was personally involved in the alleged wrongdoing. Therefore, Plaintiff's claims in Counts 68-69 should be dismissed.[7]

Plaintiff also complains that he was required to submit to the collection of his DNA in violation of his Fourth Amendment rights. Doc. 24, PageID 283-84. The Fourth Amendment prohibits "unreasonable searches and seizures." U.S. Const. Amend. IV. Critically, the Sixth Circuit has examined the reasonableness of suspicionless prisoner searches, including searches involving the extraction of a DNA sample, under a "totality of the circumstances" test. *Wilson v. Collins*, 517 F.3d 421, 427 (6th Cir. 2008). That test requires "assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests." *Id.* at 425(quoting *Samson v. California,* 547 U.S. 843, 848 (2006) (permitting suspicionless searches of parolees).

In *Wilson*, the plaintiff raised a Fourth Amendment challenge to Ohio’s law requiring convicted felons to provide DNA samples to prison officials for inclusion in state and national DNA index systems. *Wilson v. Collins*, 517 F.3d at 423-24. The Court noted that challenges to similar laws in other states "have been uniformly rejected by the courts, as the government's compelling interests in crime control have consistently been deemed to outweigh the plaintiffs' diminished privacy interests." *Id*. at 424-25 (citing cases). Under *Wilson*, the Ohio

[7] The United States Supreme Court has not only held that "Random searches of inmates, individually or collectively, and their cells and lockers are valid and necessary to ensure the security of the institution and the safety of inmates and all others within its boundaries," *Hudson v. Palmer*, 468 U.S. 517, 529, 104 S. Ct. 3194, 82 L. Ed. 2d 393 (1984), but also has upheld strip searches of inmates after meeting with a visitor. *Bell v. Wolfish*,441 U.S. 520, 560, 99 S. Ct. 1861, 60 L. Ed. 2d 447 (1979). Certainly, it is reasonable under *Turner* to strip search an inmate each time he enters the restroom during visitation to prevent him from swallowing contraband once inside, thereby thwarting a strip search conducted only upon his return to the PC unit as Plaintiff would otherwise suggest.

statute did not violate Plaintiff's constitutional rights because, considering the minimal intrusion implicated by swabbing saliva, the government's compelling interest in collecting a DNA sample outweighed his "greatly diminished privacy interests as a convicted felon." *Id*. at 427-28; see also *United States v. Conley*, 453 F.3d 674, 680-81 (6th Cir. 2006) (holding that the collection of a DNA sample from a convicted felon on supervised release does not violate the Fourth Amendment). For this reason, and because no named defendant is alleged to have been personally involved in the alleged wrongdoing, Count 70 of the Complaint should be dismissed.

**R. Plaintiff's Personal Property Claim Warrants No Relief.**

Plaintiff claims that unnamed prison officials have unlawfully taken and/or destroyed his property. Doc. 24, PageID 284. However, Plaintiff's claim are barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527, 101 S. Ct. 1908, 68 L. Ed. 2d 420 (1981), overruled in part by *Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537.

This rule applies to both negligent and intentional deprivation of property, as long as the deprivation was not done pursuant to an established state procedure. See *Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984). Because Plaintiff's claims are premised upon allegedly unauthorized acts of unidentified state officials, he must not only plead and prove the inadequacy of state post-deprivation remedies, but also allege the personal involvement of a named defendant in the alleged wrongdoing. *See Copeland v. Machulis*, 57 F.3d 476, 479-80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action. *See Brooks v. Dutton*, 751

F.2d 197 (6th Cir. 1985). Neither demonstrating the inadequacy of state post-deprivation remedies nor alleging the personal involvement of any named defendant, Counts 71-74 should be dismissed.

Likewise, Plaintiff's challenge of ODRC's smoking ban fails to state a claim. See *Hensley v. Kampshaefer*, Civil Action No. 3:07CV-616-H, 2009 U.S. Dist. LEXIS 1478 (W.D. Ky. 2009) ("In April of 2006, KSR adopted new policies and procedures banning possession of tobacco products at the prison. On March 30, 2007, Hensley filed Civil Action No. 07-CI-00226 in Oldham Circuit Court challenging the smoking ban at KSR. The state court found the action to be without merit, and entered an order on June 8, 2007 granting Kentucky Department of Corrections' ('KDOC') motion to dismiss the action"). Plaintiff's claims are no different here. Indeed, on November 7, 2006, Ohio voters overwhelmingly endorsed State Issue 5 which banned smoking inside all public places in Ohio, including prisons. Therefore, Count 75 of the Complaint fails to state a claim for relief and should be dismissed.

## III. Conclusion

Procedurally, this case has been kicking around the Court's docket since November, 2016. Substantively, the case is unwieldy, both in the class it is attempting to represent (but has failed to certify) and in the claims it purports to assert without any basis in law or fact for support. To avoid any further waste of this Court's time or of the State of Ohio's limited resources, this case should be dismissed in its entirety. Accordingly, the State of Ohio as an Interested Party respectfully requests that the Court dismiss this case in its entirety, certify pursuant to 42 U.S.C. §1915(a)(3) that an appeal cannot be taken in good faith, assess costs to Plaintiff, and award any other relief deemed necessary and just by the Court.

Respectfully submitted,

DAVE YOST
Ohio Attorney General

s/ Mindy Worly
MINDY WORLY (0037395)
Principal Assistant Attorney General
Criminal Justice Section, Corrections Unit
150 East Gay Street, 16th Floor
Columbus, Ohio 43215
Phone: (614) 728-0161; Fax: (866) 474-4985
Mindy.Worly@OhioAttorneyGeneral.gov

*Attorney for Interested Party the State of Ohio*

**CERTIFICATE OF COMPLIANCE LOCAL RULE 7.1(f)**

I hereby certify that, to the best of my knowledge, this case has not been assigned to a specific track. I further certify that a Motion for Leave to Exceed Page Limits was filed on October 10, 2019. Doc. 41. That motion is pending before the Court, however, it appears from Plaintiff's statement on the docket regarding service (Doc. 49), that a response to the complaint is due by October 21, 2019. Accordingly, this motion to dismiss is respectfully being filed prior to the ruling on the Motion for Leave to Exceed Page Limits with the hope that the Court will grant same.

s/ Mindy Worly
MINDY WORLY (0037395)
Principal Assistant Attorney General

**CERTIFICATE OF SERVICE**

I certify that on October 21, 2019, a copy of the foregoing was filed electronically in the Court's CM/ECF system. Electronic notice of this filing will be sent to all parties by operation of the Court's system.

s/ Mindy Worly
MINDY WORLY (0037395)
Principal Assistant Attorney General