IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

TED PALLADENO, Et al                  Case No 3 : 18 CV 1352

        Plaintiff,                            Judge Helmick

Vs.

GARY C MOHR, et al
Ohio Department of Rehabilitation and Corrections
Columbus, Ohio 43222

        Defendants,

RESPONSE TO MOTION TO DISMISS FILED BY THE DEFENDANTS

ERIC J ALLEN     (0073384)
The Law Office of Eric J Allen, LTD
4200 Regent, Suite 200
Columbus, Ohio 43219
Tele No. 614.443.4840
Fax No. 614.573.2924
Email:eric@eallenlaw.com

**MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS**

I.     **STANDARD**

A complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory. *See Scheid v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 437 (6th Cir. 1988).*

In dismissing a complaint pursuant to Rule 12(b)(6), Fed. R. Civ. P, "[t]he [*22] court must construe the complaint in a light most favorable to the plaintiff, and accept all of [the] factual allegations as true." *Beztak Land Co. v. City of Detroit, 298 F.3d 559, 565 (6th Cir. 2002)(quoting Bloch v. Ribar, 156 F.3d 673, 677 (6th Cir. 1998))*. "'A motion to dismiss under Rule 12(b)(6) should not be granted 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Id. (citing Buchanan v. Apfel, 249 F.3d 485, 488 (6th Cir. 2001)).* Despite the instruction to construe the complaint liberally in the plaintiff's favor, a complaint must contain "either direct or inferential allegations respecting all the material elements," and those allegations must amount to more than "bare assertions of legal conclusions." *Scheid, 859 F.2d at 436.*

II.     **LIBERALLY CONSTRUE THE COMPLAINT**

In this case, the complaint deals with inner workings of the department of corrections. The exact actions and behavior as it relate to these allegations cannot be known until discovery is completed. Certainly, these individuals are charged with supervising and directing individuals. To define exactly what they did until discovery is complete is not possible.

This complaint is exact enough to satisfy the civil rules of procedure. As stated above this court must liberally construe this complaint in favor of the Plaintiff.

III.     **COMPLAINT IS PROPERLY PLEAD**

As stated above, the exact nature of the behavior exhibited in violating the rights of the Plaintiff cannot be known in full until the discovery

IV.     THE GREIVANCE SYSTEM

Defendant states:

It is therefore curious that Plaintiff's Complaint struggles to allege that the grievance process is being blocked, Doc. 24, PageID 247, while concomitantly insisting that he exhausted all available administrative remedies before filing this action. Id. at PageID 246. Even if there was constitutional liability here, Plaintiff cannot have it both ways. Certainly, if Plaintiff exhausted his administrative remedies as he insists, his ability to grieve his claims could not have been impeded. Therefore, regardless whether Plaintiff's ability to access the grievance system was marginally affected by some unidentified person, because there is no constitutional right to an effective grievance system, Keenan v. Marker, 23 F. App'x. at 407, and no personal involvement of any named defendant is alleged, Counts 1-2 of the Complaint should be summarily dismissed.

DOC42, PageID 401

It is well-established that the due process clause does not confer upon prison inmates a right to an effective prison grievance procedure. *Walker v. Michigan Dept. Of Corrections, 128 Fed. Appx. 441, 2005 WL 742743, (6th Cir. April 1, 2005).* However, in order to sue prison officials, he must exhaust all internal remedies. If he does not, the attorney general would rightfully state he had not followed established federal law. His concern is more with being able to seek outside remedies rather complaining of a system he already knows is unfair. The Prison Litigation Reform Act requires that a prisoner must exhaust administrative remedies before filing suit in the district court. Bey v. Johnson, 407 F. 3d 801, 805 (6th Cir. 2005) petition for cert. filed 74 U. S. L. W. 3424 (January 9, 2005). The Act states: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U. S. C. § 1997e(a) (2004)). The plaintiff-prisoner has the

burden of proving that a grievance has been fully exhausted, Id. (citing Baxter v. Rose, 305 F.3d 486, 488 (6th Cir. 2002)), and the prisoner must attach documentation to the complaint as proof. Id. (citing Brown v. Toombs, 139 F.3d 1102, 1104 (6th Cir. 1998) cert. denied, 119 S. Ct. 88, 1998). Exhaustion [*7] is not jurisdictional; it is mandatory, Id. (citing Wyatt v. Leonard, 193 F.3d 876, 879 (6th Cir. 1999)), even if proceeding through the administrative system would be "futile." Id.(citing Hartsfield v. Vidor, 199 F.3d 305, 308-310 (6th Cir.1999)).

Plaintiff states that he was denied the proper paperwork by the unit staff. He <u>created</u> his own. Defendants, as a whole or individually, did not respond to this appeal. It is likely that the department will state that because he did not use the proper form, which was denied, that his appeal would be dismissed. While the bureaucratic quagmire known as the prison grievance system is well known, denying the very documents to pursue this appeal is the epitome of denial of due process.

The Prisoner Reform Litigation Act requires that the prisoner do everything possible to exhaust the procedure. *White v. McGinnis, 131 F.3d 593 (6th Cir. 1997).* When the procedure is obstructed, they must use due diligence in attempting to appeal. I.e. making his own forms. By denying him the forms, Defendants have impeded his use of the grievance process.

V. RETALIATION

Ohio Admin. Code 5120-9-31(H) prohibits ,"Retaliation or the threat of retaliation for the use of the inmate grievance procedure is strictly prohibited. Any alleged or threatened retaliation may be pursued through the inmate grievance procedure." Ohio Admin Code 5120-9-3(H).

Plaintiff has alleged a substantial claim of retaliation for using the grievance system. The complaint alleges he was harassed, abused, and neglected after complaining. This satisfies the requirements to survive an attack under Civil Rule 12.

VI.     HEALTH CARE CLAIMS

Plaintiff would argue that he does complain of the deliberate indifference required for a claim under the Eighth Amendment. In paragraph 50, he states." Has been consistently told by specialists outside of the ODRC that he must be provided a walking cane, the medications neurotome and tramadol." *Doc 24, Amended complaint, at PageID# 250*. Without this his legs will go numb and fail. *Id* On several occasions, without this treatment, he has fallen. *Id at pageID 250-251*.

This is not a matter of healthcare not being provided to the Plaintiff's liking. It is a matter of specialists outside the sphere of ODRC influence telling the Defendants to provide this treatment and them refusing. As a result, Plaintiff is falling and hurting himself further. This is deliberate indifference.

Further, "'Evidence that a prison doctor ignored an outside specialist's instructions for a prison inmate is sufficient to survive a motion for summary judgment on a deliberate indifference claim.'" *Rhinehart v. Scutt, 2014 U.S. Dist. LEXIS 150229, 2014 WL 5361936, at *20-21 (E.D. Mich. June 20, 2014); Perez v. Fenoglio, 792 F.3d 768 (7th Cir. 2015) (plaintiff stated a claim for deliberate indifference where he alleged that prison doctor ignored the treatment recommendations of outside specialists).*

This ignoring outside doctor instructions has been held to be enough to survive a motion for summary judgment, a much higher standard than the Rule 12 standard.

VII.     FORMULARY CLAIMS

The plaintiff complains of the Defendants now require that the Plaintiff pay for all medications provided to them as part of medical treatment. Plaintiff has no real source of income to pay for prescribed medication. Plaintiff must choose between buying some of his

medication and paying for basic human needs like soap. Without a cheap alternative like over the counter medications, Plaintiff must pay for more expensive counterparts.

### VIII. SINGLE CELL OCCUPANCY

The real issue here is overcrowding. The United Supreme Court has found that overcrowding present at Toledo violates the Federal Constitution. *Brown v Plata 563 U.S. 493*.

The Eighth Amendment generally prohibits prison officials from being "deliberately indifferent" to the health or safety of prison inmates and, as a result, causing them to suffer unnecessary pain or injury. In *Farmer v. Brennan, 511 U.S. 825, 839, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994),* the Court adopted "subjective recklessness as used in the criminal law" as the appropriate definition for deliberate indifference. It held that "a prison official cannot be held liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety ...." *Id. at 837*.

In the specific context of threats of harm posed by other inmates, the Court of Appeals [*10] has recognized the duty of prison officials to protect inmates against assault at the hands of other inmates. See *Wilson v. Yaklich, 148 F.3d 596, 600 (6th Cir. 1998)* ("Without question, prison officials have an affirmative duty to protect inmates from violence perpetrated by other prisoners"). At the same time, however, it is generally the case that officials, in order to be liable under the Eighth Amendment, must be aware of a specific threat to either the plaintiff, or to a class of persons to which the plaintiff belongs, and there must be objective evidence substantiating that threat; that is, the risk of harm "must be based upon more than [the inmate's] subjective fear." *Browning v. Pennerton, 633 F.Supp.2d 415, 430 (E.D. Ky. 2009)*.

The cells at Toledo are not designed to hold two prisoners for the twenty-three hours a day. Overcrowding became such an issue the Defendant's own employee's picketed to change the practice. And a powder keg has been building for years. As stated below, two inmates have been murdered. Despite the loss of human life, the Defendants have made no steps to make PC safer.

### IX. PERSONAL SAFETY

For a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing Farmer v. Brennan, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994) (applying deliberate indifference standard to medical claims); see also Helling v. McKinney, 509 U.S. 25, 35, 113 S. Ct. 2475, 125 L. Ed. 2d 22 (1993) (applying deliberate indifference standard to conditions of confinement claims)).* Inmates have a constitutionally protected right to personal safety grounded in the Eighth Amendment. *Farmer, 511 U.S. at 833.* Thus, prison staff are obliged "to take reasonable measures to guarantee the safety of the inmates" in their care. Hudson v. Palmer, 468 U.S. 517, 526-27, 104 S. Ct. 3194, 82 L. Ed. 2d 393 (1984). To establish a violation of this right, Plaintiff must show that the defendant was deliberately indifferent to the Plaintiff's risk of injury. *Walker v. Norris, 917 F.2d 1449, 1453 (6th Cir. 1990); McGhee v. Foltz, 852 F.2d 876, 880-881 (6th Cir. 1988)*. While a prisoner does not need to prove that he has been the victim of an actual attack to bring a personal safety claim, he must at least establish that he reasonably fears such an attack. *Thompson v. Cnty. of Medina, Ohio, 29 F.3d 238, 242-43 (6th Cir. 1994) (holding that the plaintiff has the minimal burden of "showing a sufficient inferential connection" between the alleged violation and inmate violence

*to "justify a reasonable fear for personal safety"). Moreover, deliberate indifference on the part of the prison official "entails something more than mere negligence," Farmer, 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." Id. Under Farmer, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837.*

Defendants have also began housing ultra-violent prisoners with vulnerable ones in the PC units. The indifference is obvious. If you place a violent gang member into a cell with a complacent or nonviolent prisoner there will be problems. This is not conjecture. Inmate Hamlin was murdered in 2013 at Toledo. Last year, Donald Harvey was murdered at Toledo Correctional. Harvey was housed in the PC unit. Their indifference is literally a matter of life and death. One must ask how many prisoners must die before the failure to protect them and enact rules that keep them safe. Notice to the defendants is that prisoners are being murdered, in PC, on their watch. One would hope that they knew this occurred.

### X. FOOD SERVICE

The food itself falls outside of any constitutional protections. *See, e.g., Davis v. Bedford Cty. Jail, No. 4:15-CV-36-HSM-SKL, 2016 U.S. Dist. LEXIS 67711, 2016 WL 3014672, at \*3 (E.D. Tenn. May 24, 2016)* ("Plaintiff's assertion that food was served at the wrong temperature relates to the quality of the meals served at the jail. Allegations about the quality of prison food are far removed from Eighth Amendment concerns because they do not constitute the wanton and unnecessary infliction of pain upon an inmate.") However, the food is so bad that the contractor had to be fined. The Defendants continue to deal with this vendor. That appears to be wanton and unnecessary.

The food provided under the current contract with the vendor is unfit for human consumption. Because of this fact, individuals are required to spend whatever little money they have on food provided in the commissary. The Defendants have fined the contractor for providing substandard meals. However, what is most important to the Defendants is not the welfare of the Plaintiff(s) but how much this contractor can save them in cost.

Even if this food was fit for consumption, there would not be enough of it for the inmates. This creates an ongoing health concern as the inmates are not provided enough calories to make it through each day.

## XI. ACCESS TO COURTS

Prison inmates have a constitutional right of meaningful access to the courts. Bounds v. Smith, *430 U.S. 817, 52 L. Ed. 2d 72, 97 S. Ct. 1491 (1977)*. This right is infringed by the Defendants.

The law library at the facility at Toledo is adequate. However, the protective custody inmates are not allowed to use it. They are permitted a small, makeshift library for an hour and a half per day, five days a week. This time is subject to the incidents of prison life, count, meals, recreation.

Even when they can go the law library they must pay for copies, pay for postage and are unable to keep law books or documents as part of their legal property.

## XII. PAROLE BOARD

While the Plaintiff(s) may not be afforded a constitutional right to parole, there must be a fair and just process. The parole board established rules for parole, abolished the rules when sued in Layne, set up a set of amorphous, subjective standards and has anecdotally released very few "old law" prisoners. Thus, ensuring job safety. This has cause at least on member to quit in

protest and the governor, who oversees this board, to call for its overhaul. This system is broken and requires fixing either by the judiciary or the executive.

### XIII. RELIGIOUS SERVICES

Plaintiff(s) have an absolute right under the First Amendment to attend services and practice their given religion. Defendants as pointed out in the complaint, have failed to comply with this precept. The allowance for religious practice is sporadic at best and nonexistent at worst.

### XIV. CLASSIFICATION

The actions of three individuals should not affect the classification of other prisoners without due process. Without making any effort to tie the actions of the escapees to those who were disciplined, these individuals named in the complaint were removed or restricted within PC.

### XV. DISCIPLINARY PROCEEDINGS

The proceedings provided to PC inmates have not passed constitutional muster in both practice and in theory. Inmates are denied documents to pursue appeals, and in some cases being removed from PC without hearing at all. (Mann) The design and implementation of this disciplinary system is the responsibility of the Defendants.

### XVI. SEARCH AND SEIZURE

There is a procedure whereby the Plaintiff(s) are strip searched at the prison in Lucasville, Ohio. This repeated action by the Defendants violate the Plaintiff(s) right against unreasonable search and seizure.

### XVII. PROPERTY CLAIMS

Plaintiff(s) have stated a valid claim that survives scrutiny under Civil Rule 12.

### XVIII. CONCLUSION

Plaintiff(s) has stated a claim for which relief can be granted.  This is true for each and every allegations within the complaint.  He would request that the court deny the motion to dismiss.

         Respectfully submitted,

         _____
         ERIC J ALLEN  (0073384)
         The Law Office of Eric J Allen, LTD
         4200 Regent, Suite 200
         Columbus, Ohio 43219
         Tele No. 614.443.4840
          Fax No. 614.573.2924
         Email:eric@eallenlaw.com

### Certificate of Service

I hereby certify that a copy of this motion was sent by the court's electronic notification system and by electronic email to the Defendant's Counsel Mindy Worly.

_____
Eric Allen